Carol J. POPE, Plaintiff,

v.

**FEDERAL EXPRESS CORP., and Danny R. Collins, Defendants.**

No. 88–1245–CV–W–1.

United States District Court, W.D. Missouri, W.D.

May 1, 1991.

Gwen G. Caranchini, Kansas City, Mo., for plaintiff.

John M. Lilla, Kansas City, Mo., for defendants.

## ORDER

WHIPPLE, District Judge.

On June 1, 1990, 138 F.R.D. 675, this Court entered an order finding that plaintiff Carol J. Pope was in violation of Federal Rules of Civil Procedure 11 and 26(g); and the Court ruled that it would impose sanctions on Ms. Pope and dismiss her cause of action pursuant to Rule 41(b) because of her dishonest conduct in this case. The sanctions and dismissal were based on the Court's finding that Ms. Pope used a manufactured document (Exhibit 203) to advance her case, knowing it was a manufactured document.

The Court will only summarize the basis for that finding in this order, but for a full understanding of the background for the Court's findings that Exhibit 203 was a cut-and-paste manufactured document, the Court incorporates herein the findings contained in the Court's June 1, 1990 ruling. The Court will also impose appropriate sanctions on plaintiff Carol J. Pope within this order.

By a subsequent order issued on November 28, 1990, Ms. Pope's attorney, Gwen G. Caranchini, was ordered to appear before this Court and show cause why she should not be held in violation of Federal Rules of Civil Procedure 11, 16(f), 26(b)(1), 26(g), 37(b) and 41(b), for continuing to rely on the manufactured document after it became obvious that her client knew the document was false and manufactured. Ms. Pope's knowledge of the fact that the document was manufactured was demonstrated by Ms. Pope at her October 12, 1989 deposition, as spelled out in the Court's June 1, 1990 order finding Ms. Pope in violation of Rules 11 and 26(g). Ms. Caranchini should have recognized at the October 12, 1989 deposition that the document had to have been manufactured by either Ms. Pope, or by someone else, with her knowledge and consent.

On December 21, 1990, pursuant to this Court's Show Cause Order issued on November 28, 1990, Ms. Caranchini appeared with her attorney, Mr. Robert Ball, to present her evidence. Defendants were present through their attorneys, John Lilla and Lindsay K. McFerrin.

## MS. CARANCHINI'S EVIDENCE

Ms. Caranchini testified that she heard her client, Ms. Pope, testify at her supplemental deposition on October 12, 1989, that the manufactured document, which had been labeled as Deposition Exhibit 203, was a photocopy made from the original document that she had, sometime in June, 1987, lying on her desk at work, when some person in her absence came by and wrote "Carol, *you 'feel'* good. *Danny*" on the document. At the end of the deposition, Ms. Caranchini asked Ms. Pope about the original document; Ms. Pope told her she no longer had the original document from which she made the photocopy. Ms. Pope then explained to Ms. Caranchini that she had found the photocopy of the document (Exhibit 203) folded up in an old notebook in September of 1989, and that she made a photocopy of that photocopy and faxed it to Ms. Caranchini.

Ms. Caranchini testified that she concluded that an original never existed and, therefore, Exhibit 203 must have been manufactured. Ms. Caranchini then conducted an investigation to determine if anyone in her office had obtained the source document from which the manufactured document was made and had given it to Ms. Pope, or if Ms. Pope had access to the Federal Express documents, and thus may have been able to obtain the source document herself.

During discovery, Federal Express delivered eight boxes of documents on June 9, 1989, to Ms. Caranchini, which she stored in an unused room in her office. Ms. Caranchini testified after the October 12, 1989, deposition that she spent about one and one-half hours going through the boxes of documents to find the source document which was identified as a "Coaching checklist" (Exhibits designated FEL 42 and FEL 124), which were two copies of the same document from which the "you feel good" language of the manufactured document came. She then asked her staff if any of them had given the source document (FEL 42 or 124) to Ms. Pope or if Ms. Pope had the opportunity to go through the eight boxes of documents, and thus obtain the source document herself. Ms. Caranchini then checked her time records to determine on what dates Ms. Pope had been in Ms. Caranchini's office.

From her investigation, Ms. Caranchini concluded that none of her staff had found and given the source document (FEL 42 or FEL 124) to Ms. Pope, and that Ms. Pope could not have had access to the boxes in the storage room to obtain a copy of the source document herself.

Ms. Caranchini then testified that after her investigation she was satisfied that Ms. Pope could not have obtained the source document from her office, and thus concluded that Ms. Pope did not create the manufactured document. Upon making that determination, Ms. Caranchini concluded that someone other than Ms. Pope had manufactured the document and planted it so Ms. Pope could find it. After reaching this conclusion, Ms. Caranchini decided that her responsibility to her client was to continue to advocate the admission of the manufactured document into evidence at trial.

Ms. Caranchini contended that if she didn't use the document, the defendant would because that was the only physical evidence Ms. Pope had against defendants. Ms. Caranchini believed that someone at Federal Express or defendant Collins had manufactured the document because defendants knew that plaintiff was being sexually harassed. Ms. Caranchini testified that she was aware that Ms. Pope alleged that someone came by her desk and wrote the words, "Carol, *you 'feel'* good! *Danny"* on a document. The document was a revenue goal document that Ms. Pope used in her job which she claims was lying on her desk when someone came by and wrote that inculpatory statement on it. Ms. Pope claimed that when she discovered someone had written this comment on her revenue goal paper she made a copy of it, and that is the copy she found in September of 1989.

On the second day of the hearing, Ms. Caranchini's attorney presented evidence through the testimony of Ms. Caranchini's employees. Ms. Delores Kliethermes, a legal assistant for Ms. Caranchini, testified that she reviewed the daily calendar, the telephone message book and time sheets to determine when Ms. Pope had been in the office. Ms. Kliethermes testified that she reviewed all the above records for the period of June 1989 through January 1990. A few minutes later, after Ms. Caranchini's attorney showed Ms. Kliethermes that there were records for all of 1989, she then testified that she had reviewed the records for all of 1989. Ms. Kliethermes testified that the office policy is to make a note of every incoming telephone message; to note on a time sheet or calendar each time a client comes in; and to make a note on a time slip if she gives a document to a client. The time sheets indicate Ms. Pope was not in the office from June 1, 1989 through September 27, 1989. However, Ms. Kliethermes later testified that Ms. Pope was in the office July 20, 1989, July 21, 1989, and July 22, 1989, although there are no time slips for July 20, 1989 or July 21, 1989, showing that Ms. Pope was in the office on those dates. Ms. Kliethermes

then attempted to explain it away by stating that time sheets which were dated July 26, 1989 appeared to have been marked out and the number 21 or 22 written in. Ms. Kliethermes further testified that a yellow marked time sheet which says July 21 should say July 27.

Ms. Kliethermes further testified that there was no way that Ms. Pope had been in the office going through the eight boxes of Federal Express documents. Moreover, on cross examination, Ms. Kliethermes testified that if she had given Ms. Pope any documents she would have made a note of it on a time sheet, but she could not say if other employees gave Ms. Pope any documents.

Ms. Kliethermes also testified that the copy machine in Ms. Caranchini's office is located at the end of a hall, and as you walk down the hall to the copy machine you pass the office where the eight boxes of Federal Express documents were stored. The office where the Federal Express documents were stored also contains the office coffee pot. Ms. Kliethermes testified that anyone sitting at the front desk of the office cannot see the coffee machine or the copy machine, and a person in the billing room where she (Ms. Kliethermes) works 80% of the time, can only see the reception area. Ms. Kliethermes stated that clients are allowed to get coffee from the coffee pot themselves.

A former legal secretary for Ms. Caranchini, Ms. Mollie Forge, testified that she remembered that the Federal Express documents arrived at the office on June 9, 1989. Ms. Forge was instructed to not let clients have copies of documents. Accordingly, Ms. Forge did not give Ms. Pope any Federal Express documents, and Ms. Pope never asked Ms. Forge to make copies of any Federal Express document for her.

Ms. Forge testified that after Ms. Caranchini and Ms. Pope came back from the October 12, 1989, supplemental deposition of Ms. Pope, Ms. Caranchini advised everyone in the office that Mr. Lilla had accused Ms. Caranchini or Ms. Pope or Ms. Caranchini's staff of manufacturing Exhibit 203. Ms. Forge, after experimenting by cutting and pasting the words from Federal Express Exhibit 42 and duplicating Exhibit 203, concluded that Exhibit 203 had come from Federal Express Exhibit 42.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

█ The Court's show cause order to Ms. Caranchini stated that in addition to any testimony presented at the show cause hearing, the Court would also be considering all the pleadings, responses, recorded pre-trial conferences, courtroom proceedings and exhibits already in evidence. From the evidence presented by the handwriting expert at the evidentiary hearing which resulted in the June 1, 1990 Order, the Court found that Exhibit 203 was manufactured from Federal Express Exhibit FEL Exhibit 42 or FEL Exhibit 124, and it was manufactured in such a way as to make it impossible for an original of Exhibit 203 ever to have existed. When Ms. Pope testified at her October 12, 1989 supplemental deposition that she found the original handwritten document of 'Exhibit 203 on her desk with the words "Carol, *you feel* good. *Danny*" written on it, she was lying. The Court found then and finds now that Pope's claim that she had an original document of Exhibit 203 means that she either manufactured Exhibit 203 or knows who manufactured Exhibit 203.

Throughout this case, from October 12, 1989 to the March, 1990 hearing, Ms. Caranchini has refused to concede or acknowledge that her client must be lying about the manufactured document. Ms. Caranchini's position that it must have been defendants who manufactured the document can only be maintained if Ms. Caranchini ignores her client's repeated assertions that she at one time had the handwritten original.

Rule 11, Fed.R.Civ.P. provides:

* * * The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information

and belief formed after *reasonable inquiry it is well grounded in fact...*

The inquiry into the manufactured document conducted by Ms. Caranchini was not enough to satisfy the requirements of Rule 11. In fact, it was not even necessary. What Ms. Caranchini obviously failed to do is critically scrutinize the statements of her client during her October 12, 1989 deposition. Ms. Caranchini was shown that, without question, the handwritten statement on Exhibit 203 was manufactured by cutting the words "you," "good," and "feel" from Exhibits FEL 42 or FEL 124, and pasting those words on a copy of a revenue goal document, and then photocopying the revenue goal document to make the words appear to have been handwritten on the document. Therefore, Exhibit 203 was first a document with words that had been cut and pasted on it; then it became a photocopy of that cut-and-paste job. That this was the process by which Exhibit 203 was created is uncontroverted. The significance is that *at no time* could an original of Exhibit 203 have existed. Ms. Caranchini, armed with this knowledge, at that point should have realized that her client was lying about the document and how it originated.

Ms. Caranchini's evidence at the show cause hearing that she established to her satisfaction that Ms. Pope could not have obtained a copy of the source documents FEL 42 or FEL 124 from her office is not sufficient. Ms. Caranchini has not demonstrated that it was impossible for Ms. Pope to have obtained one of the source documents. She has only shown that her employees did not see Ms. Pope obtain it. The Court concludes, from the testimony of Ms. Kliethermes, that the records she reviewed are not accurate enough to allow the witness to say with certainty when Ms. Pope was in Ms. Caranchini's office. The Court further finds that it is obvious that Ms. Kliethermes not only could not state with any degree of accuracy when Ms. Pope was in the office, she certainly could not state what Ms. Pope did when she was in the office.

From the testimony of Ms. Kliethermes, it is obvious that a client or guest at Ms. Caranchini's office can go to get a cup of coffee or use the copy machine without being seen by Ms. Kliethermes. The obvious answer is that Ms. Pope or some person did obtain a copy of one of the source documents to manufacture Exhibit 203. There is no question that Ms. Pope and Ms. Caranchini were looking at performance reviews in the personnel file of employees of Federal Express (where the source document was located) in Ms. Caranchini's office on July 22, 1989 prior to Ms. Pope's July 27, 1989 deposition. (Tr. of April 4, 1990 hearing Vol. II pg. 258; pg 280, lines 1, 2; pg 322, lines 13–17).

The Court further finds that Ms. Pope never wavered from her assertion that she saw an original of Exhibit 203. She stated that during her deposition on October 12, 1989, and she continued to emphatically state it during the hearings held on March 30, 1990 (Tr. of March 30, 1990, Vol. I, pg. 198, lines 11–23), and (Tr. of April 4, 1990, Vol. II pg. 225, lines 3–8; pg. 232, lines 15–20; pg. 240, lines 7–10; pg. 327, lines 6–14).

The Court finds that Ms. Caranchini's reasonable inquiry should have been to review the testimony of her client from the October 12, 1989 deposition to satisfy herself as to whether Ms. Pope was lying when she stated that the writing on Exhibit 203 had been written directly on it by an individual. Ms. Caranchini should have then realized that the evidence produced by the defense at the deposition demonstrated unequivocally that Exhibit 203 was made by a cut-and-paste procedure, which means that an original of Ex. 203 never existed. If Ms. Caranchini had critically scrutinized that information, she would have reached the obvious conclusion that her client was lying about Exhibit 203, attempting to advance her case by the use of a false document and false testimony, and thus was perpetrating a fraud on the Court.

Ms. Caranchini not only failed to do this, she conjured up what can only be termed as a bizarre theory. It goes like this: one of the defendants (before this action even commenced) must have manufactured Ex-

hibit 203 and placed it on Ms. Pope's desk so that Ms. Pope would find it and save it to be subsequently produced in her Title VII cause of action against defendants. Ms. Pope would then claim Exhibit 203 was a copy of the original, and then the Court, recognizing the falsity of her representation, would throw her case out.[1] In any event, given the fact that no original *ever* existed, Ms. Caranchini's far-fetched theory does not explain Ms. Pope's statement that she saw an original of Exhibit 203. After Ms. Caranchini blindly ignored the false testimony given by her client in her October 12, 1989 deposition, she continued to rely on Exhibit 203 and pursue the case in a "business as usual" manner.[2]

Ms. Caranchini clearly violated Rule 11, and therefore sanctions must be imposed on her.

■ The Rule 11 Advisory Committee Notes indicate that Rule 11 is intended to permit the court to award expenses and attorney fees to a party "whose opponent acts in bad faith in instituting or conducting litigation." (*Citing Roadway Express, Inc. v. Piper*, 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980)). The Eighth Circuit has held that Rule 11 is "intended to be vigorously applied by district courts to curb widely acknowledged abuse resulting from the filing of frivolous pleadings and other papers." *Adduono v. World Hockey Assn.*, 824 F.2d 617, 621 (8th Cir.1987). Once a violation of Rule 11 is established, imposition of sanctions by the court is mandatory. *Wise v. Pea Ridge School District No. 109*, 675 F.Supp. 1524, 1533 (W.D.Ark. 1987), *aff'd.* 855 F.2d 560 (8th Cir.1988).

■ Rule 11 sanctions are meant to serve several purposes, including (1) deterring future litigation abuse, (2) punishing present litigation abuse, (3) compensating victims of litigation abuse, and (4) streamlining court dockets and facilitating case management. *White v. General Motors Corp., Inc.*, 908 F.2d 675 (10th Cir.1990).

The Court finds that monetary sanctions are appropriate in this case.

## SANCTIONS IMPOSED ON MS. CARANCHINI

■ At the Court's direction, defendants submitted their claims for attorney fees and expenses memorialized by copies of billings from the Jackson & Bailey Law firm and from Federal Express's in-house counsel in Memphis, Tennessee. The net attorney fees and expenses incurred by defendants for representation by Jackson & Bailey is $114,412.79. The fees and expenses chargeable to defendant Federal Express's in-house legal staff is $18,915.13.

Review of the billing records submitted indicates a substantial amount of the billing was for trial preparation before and after the October 12, 1989 deposition of Carol J. Pope. Since the Court is not addressing the merits of the case, it would be inappropriate to assess the total cost of trial preparation to Ms. Pope and Ms. Caranchini. On October 12, 1989 at the taking of Ms. Pope's supplemental deposition, the defendants were aware that Exhibit 203 was manufactured by a cut-and-paste process and defendants had successfully established by Ms. Pope's sworn testimony that she was lying about the existence of an original of Exhibit 203. Defendants were therefore in a position as of October 12, 1989, to move for sanctions against Ms. Pope and Ms. Caranchini.

The Court finds that the reasonable attorney fees and expenses that should be

---

1. For this theory to be even remotely on target, one would have to believe that defendants *knew* plaintiff would file suit, knew she would be fooled into thinking it was an "original" document, and *knew* that the Court would dismiss the case rather than simply forbidding the use of Exhibit 203 at trial. It simply is incredulous that (1) the theory could be true, and (2) more significantly, that Ms. Caranchini would advance such a preposterous theory.

2. She signed under oath and served her responses to defendants' opening interrogatories on October 12, 1989; on October 13, 1989 she filed her response to defendants' supplemental request for production of documents pertaining to Exhibit 203; on December 5, 1989 she filed her first amended designation of experts and designation of events giving rise to Ms. Pope's allegation of Title VII violations; and on March 19, 1990 she filed plaintiff's second amended designation of experts and designation of events giving rise to allegations of Title VII violations.

assessed to Ms. Pope and Ms. Caranchini should be for the work done by defendants in organizing, reviewing and retrieving the eight boxes of documents that were produced at plaintiff's request, together with the time expended in developing the evidence to establish that Ms. Pope had manufactured Exhibit 203. This includes preparing for and taking Ms. Pope's deposition on October 12, 1989, and the three day hearing on defendnts' Motion for Sanctions which took place on March 30 and April 4 and 5, 1990. As a sanction, the Court finds that Ms. Pope and Ms. Caranchini should be jointly and severally liable to defendants in the amount of $30,000.00 for the reasonable attorney fees incurred by defendants. Such amount will also serve the four purposes of Rule 11 sanctions as stated in *White v. General Motors Corp., Inc., supra,* which are: (1) deterring future litigation abuse, (2) punishing present litigation abuse, (3) compensating victims of litigation abuse, and (4) streamlining court dockets and facilitating case management.

By its order dated October 1, 1990, the Court directed Ms. Caranchini to file copies of her federal income tax returns for the past five years. Those returns were filed jointly by Ms. Caranchini and her husband *in camera* and under seal. Pursuant to Ms. Caranchini's request, the Court has ordered that the tax returns be subject to a protective order.

Having considered the tax returns, the Court finds that Ms. Caranchini has earned, and has the capacity of earning in the future, a substantial income by practicing law. The Court has not and does not intend to go into a detailed analysis regarding the net profit Ms. Caranchini has earned each year, since such analysis is time consuming and would be subject to continued debate as to whether Ms. Caranchini has properly characterized her deductions and application of costs and expenses in arriving at the final taxable income reported. Suffice it to say that the tax returns clearly indicate Ms. Caranchini has the ability to pay for the sanctions that will be imposed.

The Court is aware that, on April 10, 1989, Ms. Caranchini was also found in violation of Rule 11 in the U.S. District Court of Kansas. *See, White v. General Motors Corp.,* 126 F.R.D. 563 (Dist. of Kans.1989). The district court's finding that Ms. Caranchini violated Rule 11 was affirmed by the 10th Circuit on July 19, 1990, but the case was remanded to determine whether the amount of money awarded to defendant was the least necessary means to deter future misconduct, and for the district court to consider relative fault. *White v. General Motors Corporation,* 908 F.2d 675 (10th Cir.1990). The Court is not aware that these determinations have been made by the district court.

The Kansas opinion is material to this case because Ms. Caranchini, after being sanctioned on April 10, 1989, for violating Rule 11, again engaged in sanctionable conduct in this case as of October 12, 1989. In the Kansas district court case, the court initially ordered Ms. Caranchini and her two clients to jointly and severally pay defendants $172,382.19. That sanction was in place on October 12, 1989. However, the imposition of this award against Ms. Caranchini and her clients obviously did not deter Ms. Caranchini from committing like conduct in this case. She once again blindly pursued this case with the attitude that her client was 100% forthright and honest, everyone else was wrong, scheming and deceitful. The Court, therefore, determines that Ms. Caranchini's ability to pay should be balanced with what it will take to deter her future misconduct. The Court will stop short of revoking Ms. Caranchini's license to practice law before this Court. Because the Court finds that monetary damages based on her present and future income will be a sufficient deterrent, hopefully this sanction will force her to stop her self-destructive practice of believing her clients without question, and of conjuring up all types of suspected conspiracies, plots and schemes allegedly plotted against her by opposing parties, opposing attorneys, and any Court that questions her conduct.

### SANCTIONS IMPOSED ON
### · CAROL J. POPE

■ The Court also has under consideration the sanctions to be imposed separately on plaintiff, Ms. Carol J. Pope.

By subsequent Order, the Court directed plaintiff to file a financial statement and a copy of plaintiff's joint tax returns *in camera* and under seal to assist the Court in determining her ability to pay monetary sanctions. After examination of Ms. Pope's tax returns, the Court finds that she has the ability to earn an income sufficient to pay the monetary sanctions the Court imposes for her wrongful conduct. Ms. Pope earned a substantial income when working as an account executive for Federal Express and she is building a growing real estate sales business which she operates from the family home. While her net income is less than she made at Federal Express, she is offsetting a good part of her gross income with the depreciation of two automobiles, office equipment, and a portion of the expenses of the family home as business expenses. In order to respect the privacy of plaintiff, and more particularly her husband (who is not a party to this case), the Court will not reveal monetary amounts from their joint tax returns, but the Court finds from the information contained in the tax returns that Ms. Pope has the ability now and in the future to pay monetary sanctions.

The Court finds that the appropriate sanctions that should be imposed separately on Ms. Pope should be the reasonable attorney fees the defendant incurred from September 29, 1989, which is the date Ms. Caranchini sent a copy of Exhibit 203 to defendants' attorney, through October 12, 1989, which the Court finds to be Three Thousand Eight Hundred Eighty-two and 50/100 DOLLARS ($3,882.50). In addition, Ms. Pope shall pay the expenses incurred to have handwriting expert, Charles C. Scott, examine Exhibit 203 totalling Five Thousand DOLLARS ($5,000.00). Additionally, the Court finds that plaintiff and Ms. Caranchini should be jointly and severally liable to defendants for their reasonable attorney fees incurred by defendants in the amount of Thirty Thousand DOLLARS ($30,000.00).

The Court disagrees with the argument of plaintiff and her attorney that the only sanctions that should be imposed on them is to preclude plaintiff from using Exhibit 203 in this case. Imposing such a sanction would send the wrong message to litigants and the bar: you have nothing to lose by attempting to use manufactured documents in your case because you might get by with it, thus greatly enhancing your chance of winning at trial; and, the only risk you take if you get caught is not getting to use the manufactured document.

The attempt to enhance a case by fraudulent conduct must result in the offending party not being permitted to proceed with his/her case, and stiff monetary penalties, or the integrity of the legal system will be jeopardized. Accordingly, it is

ORDERED that Carol J. Pope shall pay to defendant monetary sanctions in the amount of Eight Thousand Eight Hundred Eighty-two and 50/100 DOLLARS ($8,882.50) as her sole and separate damages; it is further

ORDERED that Gwen Caranchini and Carol J. Pope shall pay defendants jointly and severally monetary sanctions of $30,000.00; it is further

ORDERED that the costs of this action shall be taxed against plaintiff and her attorney.