**Frederick Lawrence WHITE, Jr.,
Benjamin L. Staponski, Jr.,
Plaintiffs,**

v.

**GENERAL MOTORS CORPORATION,
Defendant.**

Civ. A. No. 88–2053–S.

United States District Court,
D. Kansas.

Sept. 10, 1991.

---

Gwen G. Caranchini, Kansas City, Mo., Linda Scott Skinner, Overland Park, Kan., for plaintiffs.

Paul Scott Kelly, Jr., John J. Yates, R. Kent Sellers, Bernard J. Rhodes, Gage & Tucker, Kansas City, Mo., Stephen A. Murphy, Gage & Tucker, Overland Park, Kan., for defendant.

## MEMORANDUM AND ORDER

SAFFELS, Senior District Judge.

This matter is before the court on remand from the Tenth Circuit Court of Appeals to determine an appropriate sanction to be imposed against plaintiffs and their attorney pursuant to Rule 11 of the Federal Rules of Civil Procedure.

On September 30, 1988, this court granted summary judgment in favor of defendant General Motors Corporation ("GM" or "defendant"). In ruling for the defendant, the court further found that there was no evidence to support plaintiff Frederick Lawrence White, Jr.'s slander claim. *White v. General Motors Corp., Inc.,* 699 F.Supp. 1485, 1488 (D.Kan.1988), *aff'd.,* 908 F.2d 669 (10th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 788, 112 L.Ed.2d 850 (1991). The court subsequently ruled that

the plaintiffs and their attorney's pursuit of plaintiff White's slander claim constituted a violation of Rule 11 because it was asserted without a reasonable inquiry into whether it was well grounded in fact. *White v. General Motors Corp., Inc,* 126 F.R.D. 563 (D.Kan.1989), *aff'd in part, vacated in part,* 908 F.2d 675 (10th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 788, 112 L.Ed.2d 850 (1991). The court further found the plaintiffs' pursuit of their claims of wrongful discharge and breach of contract was likewise sanctionable because plaintiffs had executed valid releases, and their attorney Gwen G. Caranchini ("Ms. Caranchini") failed to investigate the releases and their apparent validity prior to filing the complaint. Finally, the court found that the action was advanced for an improper purpose in further violation of Rule 11. Accordingly, the court imposed monetary sanctions and ordered plaintiffs and their attorney to pay $172,382.19 in attorney's fees and costs incurred in defending against plaintiffs' claims.

Plaintiffs appealed this court's ruling imposing sanctions. The Tenth Circuit Court of Appeals upheld the imposition of sanctions. However, the court vacated and remanded the case for a reassessment of the amount of sanctions to be imposed. Specifically, the court is to reassess defendant's request for "reasonable attorney's fees," and second, the court is to make a finding on what amount is the minimum which would deter future sanctionable conduct. Further, the Tenth Circuit directed this court to make specific findings with regard to the degree of fault among the sanctioned plaintiffs and their attorney in order to determine whether joint and several liability is warranted. Accordingly, the court will address each of these issues.

■ As stated by the Tenth Circuit, "Rule 11 sanctions are meant to serve several purposes, including (1) deterring future litigation abuse, (2) punishing present litigation abuse, (3) compensating victims of litigation abuse, and (4) streamlining court dockets and facilitating case management." *White v. General Motors Corp.,* 908 F.2d 675, 683 (10th Cir.1991), *cert. de-nied,* —— U.S. ——, 111 S.Ct. 788, 112 L.Ed.2d 850 (1991) (citations omitted). The primary goal is deterrence. *Id.* (citing *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 110 S.Ct. 2447, 2454, 110 L.Ed.2d 359 (1990)). However, "[t]he rule's mention of attorney's fees does not create an entitlement to full compensation on the part of the opposing party every time a frivolous paper is filed." *White,* 908 F.2d at 683. In determining what amount of fees to impose, the amount is normally limited to "reasonable attorney's fees and expenses the opposing parties incur." *Id.* at 684. Further, the amount ultimately imposed should be the "least severe sanction adequate to deter and punish the plaintiff." *Id.* (citing *Doering v. Union County Bd. of Chosen Freeholders,* 857 F.2d 191, 195–96 (3d Cir.1988)).

## I. REASONABLENESS CALCULATION

On July 8, 1991, this court heard oral argument and received evidence on the issue of what amount of attorney's fees should be assessed against plaintiffs and their attorney Ms. Caranchini as consistent with the opinion of the Tenth Circuit Court of Appeals, filed July 19, 1990. Upon examination of the parties' submissions, the evidence presented at the hearing and applicable law, the court makes the following findings of fact.

■ The amount of attorney's fees requested by GM is reasonable when viewed in the context of *Ramos v. Lamm,* 713 F.2d 546, 553–55 (10th Cir.1983).

### A. Time

The court finds that the number of attorney hours spent in responding to the sanctioned pleadings and related discovery are reasonable. The court has carefully reviewed the time records which accompany Defendant's Supplemental Memorandum Regarding Amount of Sanctions (Doc. 205), and finds that these provide a detailed breakdown of the actual numbers of hours spent by each attorney on specific tasks. Thus, this fee request satisfies the first criterion of *Ramos, i.e.,* that the time records be meticulously kept and reflect

what specific task the attorney worked on. *Ramos,* 713 F.2d at 553. Further, the court finds that the total number of hours spent by each attorney were reasonably expended, and thus, billable to the plaintiffs and their attorney. The court bases this finding upon the its review of the total number of hours reported by each attorney in comparison with the studies cited in *Ramos* which indicate that 1400 to 1600 hours per year for an associate is appropriate, and 1200 to 1400 per year for a partner represents what can actually be billed to clients annually. *Ramos,* 713 F.2d at 553. The court finds that the hours billed reflect "billable" time, as opposed to "raw" time. *See* Defendant's Application for Attorneys' Fees and Expenses Exhibit A (Doc. 135).

Further, in reviewing the hours spent on tasks billed to the defendant, the court finds that these hours were reasonable in view of the nature of this action. Specifically, the court finds that this case was a complex technical case. Superficially, the claims of the plaintiffs appear less complex because they involve a slander claim, wrongful discharge claims and breach of contract claims. However, in actuality the court finds that the plaintiffs' claims were complex because they were intertwined with technical issues regarding allegedly defective brake work at GM. Further, the court finds that the plaintiffs pursued discovery of these technical matters in an abusive manner which caused the defendant to incur a significant amount of expenses and attorney's fees when properly responding to the plaintiffs' discovery requests.

While it is true that an injured party has a responsibility to mitigate its expenses, and the number of hours incurred in defending this action to the point of summary judgment seems incredible upon a general review, the court finds that upon a thorough review of defendant's time sheets, defendant did not overstaff this action. Defendant's time-consuming responses were "necessitated by the maneuvering of the other side." *Ramos,* 713 F.2d at 554. *See also* Defendant's Supplemental Memorandum Regarding Amount of Sanctions, Exhibit B (Doc. 205).

As acknowledged by the defendant, it incurred approximately one fourth of its expenses in conducting an investigation of the plaintiffs' claims, discovery on the release issue, and legal research and briefing on the motion for summary judgment. *See* Defendant's Supplemental Memorandum Regarding Amount of Sanctions, Exhibit A, Affidavit of Paul Scott Kelly, Jr. (Doc. 205). The court finds that the remaining expenses were the result of GM's having to respond to improper discovery requests which arose out of the sanctionable filings. Further, the court finds that the defendant did try to mitigate its expenses in this regard by moving to stay discovery. Defendant first attempted to work out an agreement with regard to staying discovery. However, this attempt failed. Subsequently, defendant filed a motion to stay discovery, but defendant's motion was denied. Following this adverse ruling, the defendant placed the primary responsibility for the time-consuming task of responding to plaintiffs' numerous discovery requests (approximately 525 written requests) on an associate. The court does not find this to be overstaffing the discovery stage of the trial.

Moreover, with respect to GM's overall staffing of the case, the court finds that defendant's staffing was appropriate. The court's finding is based upon the potential impact of the litigation on defendant, *i.e.,* plaintiffs' allegations that GM had sold cars with defective brakes, the complexity of the litigation based upon plaintiffs' complaint and defendant's prior experience in a similar case in which a another former GM employee was represented by Ms. Caranchini, namely *Perkins v. General Motors Corp.,* No. 86–0665–CV–W–9 (W.D.Mo. 1986).

Further, the court finds that the defendant's law firm had efficiently divided the responsibilities of responding to plaintiffs' case. For example, defendant had given the difficult and time-consuming task of responding to discovery requests to an associate of the law firm rather than a more expensive partner. Further, the court finds that the briefing work was divided

between this associate and another attorney who was a mid-level partner familiar with employment litigation. Finally, the court finds that in view of the complexity of this case, it was appropriate for the senior litigation partner to participate more actively in this case, than he would normally in an employment case. The court further finds that it was wholly appropriate to have another attorney serve as local counsel. Overall, six attorneys participated in the defense of this case. Two were involved on a limited basis, one as local counsel and the other briefed the limited issue of sanctions. Thus, four attorneys performed almost all of the remaining work on defendant's case. The court finds that such staffing was appropriate and that there was not a significant amount of duplication of services, as most tasks were delegated to one attorney whose experience better enabled that attorney to conduct the appropriate task. Further, the most time-consuming tasks were assigned to associates whose billing rates were significantly lower than the partners involved. Finally, the court finds that defendant's have reduced their fee request by subtracting those fees which were incurred when responding to negative publicity and media attention initiated by the plaintiffs and their attorney.

### B. Hourly Rate

The court finds that the hourly rates charged by defendant's attorneys, ranging from $95 for associates to $185 for senior partners and averaging $115 per hour overall, are reasonable for attorneys of comparable skill and experience in the greater Kansas City area. *See* Defendant's Application for Attorneys' Fees and Expenses, Affidavit of Paul Scott Kelly, Jr., at 8 (Doc. 135). The court bases this finding upon the quality of work performed by the defendant's attorneys, and upon those rates

which are charged by attorneys associated with firms of similar quality and reputation to Gage and Tucker. Accordingly, the court finds the hourly rates to be reasonable. Thus, defendant's fee request of $169,187.24 ($172,382.19 minus $3,194.95 for time billed in responding to negative publicity) is a reasonable request for attorney's fees and costs.

## II. JOINT AND SEVERAL LIABILITY

■ In assessing the relative culpability of the wrongdoers, the court finds that the degree of fault of the plaintiffs in relation to their attorney is substantially less. The court bases this finding upon Ms. Caranchini's knowledge and experience in employment law, and her recent history of sanctionable conduct. Further, the court finds that while plaintiffs were aware of the existence of releases signed by each upon their termination of employment, the court cannot determine to what degree Ms. Caranchini misled or misinformed the plaintiffs of the feasibility of their claims in view of the releases.[1] Further, the court finds that when Ms. Caranchini learned of the existence of releases, she simply did not properly investigate to determine the impact such releases would have on plaintiffs' claims. Further, when she was challenged with the releases, Ms. Caranchini advanced specious arguments. Accordingly, the court does not find that plaintiffs should be sanctioned for their attorney's wrongful behavior. Accordingly, the court will not impose sanctions against White and Staponski.[2]

## III. MINIMUM TO DETER

■ As stated by the Tenth Circuit Court of Appeals, the purpose of imposing "sanctions is to deter attorney and litigant misconduct, not to compensate the opposing party for its costs in defending a frivolous suit." *White*, 908 F.2d at 684. Thus,

---

1. In this regard, the court notes that the conflict of interest between Ms. Caranchini and her clients in resolving the issue of sanctions was acknowledged and waived by the plaintiffs. *See* Plaintiffs' Suggestions in Opposition to Defendant's Supplemental Application for Attorney's Fees Filed June 17, 1991, Exhibit E, and Exhibit F (Doc. 206).

2. The court further notes that the defendant neither sought, nor did the court impose, sanctions against Ms. Linda Skinner who served as local counsel for plaintiffs. The court finds that Ms. Skinner should not be sanctioned.

in determining what amount of sanctions should be imposed, the court must discern that amount "reasonably necessary to deter the wrongdoer." *Id.* at 685 (citing *Doering,* 857 F.2d at 195–96). In addition, the court must consider the ability of the wrongdoer to pay the sanctions because "the purpose of monetary sanctions is to deter attorney and litigant misconduct." *White,* 908 F.2d at 685. Further, the ability to pay is analogous to an affirmative defense and the burden is placed upon the wrongdoer to come forward with evidence of their financial status. *Id.* In making this determination, the court may consider the wrongdoer's history, experience and ability, the severity of the violation, and the degree to which malice or bad faith contributed to the violation, the risk of chilling similar litigation and other factors deemed appropriate in this case. *Id.*

■ This issue is perhaps the most difficult before the court. Subsequent to this court's order imposing sanctions against the plaintiffs' and their attorney, Ms. Caranchini, Ms. Caranchini has been sanctioned by two federal judges in the Western District of Missouri. In one of those cases, a monetary sanction of $30,000 was imposed jointly and severally against Ms. Caranchini and her client. *See Pope v. Federal Express Corp.,* 138 F.R.D. 684 (W.D.Mo.1991). In another case, Judge D. Brook Bartlett of the Western District of Missouri imposed sanctions against Ms. Caranchini, however, the court did not impose a monetary sanction because the parties reached a settlement agreement and the case was dismissed prior to the imposition of a monetary sanction. Judge Bartlett later declined to withdraw his order imposing sanctions against Ms. Caranchini.

With this background in mind, the court makes the following findings. The court has carefully reviewed the submissions of Ms. Caranchini which are relevant to her ability to pay. These submissions include her affidavit and income tax returns for the past five years.

Upon consideration of the above information, the court finds that Ms. Caranchini,

has earned and continues to earn a substantial income from the practice of law. The court finds that she does have the ability to pay the monetary sanctions to be imposed by this court. Moreover, while the court is somewhat skeptical that imposing a monetary sanction against Ms. Caranchini in the full amount of attorney's fees and expenses incurred by GM would deter or alter her conduct, the court will give Ms. Caranchini the benefit of the doubt and will impose a monetary sanction in the amount of $50,000. Specifically, the court finds that Ms. Caranchini has the ability to pay this amount, and this is the minimum amount of sanctions which would deter her from similar conduct.

IT IS BY THE COURT THEREFORE ORDERED that Gwen G. Caranchini is sanctioned monetarily in the amount of $50,000 to be paid to the defendant General Motors Corporation.