In re Gwen G. CARANCHINI,
Respondent.

No. 77586.

Supreme Court of Missouri,
En Banc.

Nov. 26, 1997.

As Modified on Denial of Rehearing
Dec. 23, 1997.

John E. Howe, Sam S. Phillips, Chief Disciplinary Counsel, Jefferson City, Kevin McCormick, Bottaro, McCormick & Morefield, Kansas City, for Informant.

John B. Gage II, Overland Park, KS, Karen K. Howard, Gwen G. Caranchini, Kansas City, for Respondent.

LIMBAUGH, Judge.

## ORIGINAL DISCIPLINARY PROCEEDING

This is an original disciplinary proceeding filed in four counts. The Chief Disciplinary Counsel ("Informant") charges Gwen G. Caranchini ("Respondent") with numerous violations of the Missouri Rules of Professional Conduct ("Missouri Rules") based upon Respondent's misconduct in four separate federal court cases. The federal courts have sanctioned Respondent for her misconduct. After consideration of the propriety of sanctions under the Missouri Rules based on the findings of misconduct in those federal cases, this Court orders that Respondent be disbarred.

Upon the filing of the formal information in this Court the Honorable David L. Busch was appointed as special master. After hearing, the master determined that numerous violations had occurred, but recommended only that Respondent be reprimanded. Nonetheless, "[i]n a disciplinary proceeding, the master's findings of fact, conclusions of law, and recommendation are advisory." *In re Charron*, 918 S.W.2d 257, 259 (Mo. banc 1996). This Court reviews the evidence *de novo* and draws its own conclusions based upon the weight of the evidence. *Id.* Because the charges against Respondent are derived from federal court findings, this Court must determine whether those factual findings constitute violations of the Missouri Rules. Before considering specific rule violations and appropriate sanctions, however, two threshold issues regarding the propriety of basing state disciplinary action on federal court findings must be addressed: 1) the application of offensive non-mutual collateral estoppel in state disciplinary actions, and 2) the impact of the double jeopardy prohibition on successive federal and state disciplinary actions.

## I. OFFENSIVE NON–MUTUAL COLLATERAL ESTOPPEL

Respondent claimed in the proceeding before the master, and continues to claim before this Court, that she is entitled to a hearing on the underlying facts of the federal sanction decisions. The master determined that the doctrine of offensive non-mutual collateral estoppel precludes Respondent from relitigating the federal courts' factual determinations. This Court agrees.

## A. Application of Offensive Non–Mutual Collateral Estoppel in Disciplinary Proceedings

 The collateral estoppel doctrine precludes parties from relitigating issues of ultimate fact that have previously been determined by a valid judgment. *King Gen. Contractors, Inc. v. Reorganized Church of Jesus Christ of Latter Day Saints*, 821 S.W.2d 495, 500 (Mo. banc 1991). Traditionally, collateral estoppel was limited by the concept of mutuality, which meant that a judgment could not be used for estoppel purposes unless both parties had been parties to the original judgment. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326–27, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979). However, this Court has since abandoned the mutuality requirement. *Board of Educ. v. City of St. Louis*, 879 S.W.2d 530, 532 (Mo. banc 1994); *Helm v. Wismar*, 820 S.W.2d 495, 498 (Mo. banc 1991); *Oates v. Safeco Ins. Co. of America*, 583 S.W.2d 713, 719 (Mo. banc 1979). Although collateral estoppel is more commonly invoked by defendants, it is also used by plaintiffs "offensively" to estop defendants from relitigating issues that have been determined by a prior valid judgment. *Parklane Hosiery*, 439 U.S. at 329, 99 S.Ct. at 650. This Court has also approved a variation of the doctrine called offensive non-mutual collateral estoppel that may be invoked where the plaintiff was not a party to the earlier judgment. *Helm*, 820 S.W.2d at 498; *Oates*, 583 S.W.2d at 719.

Although this Court has not directly and explicitly addressed the application of offensive non-mutual collateral estoppel in the context of disciplinary actions, it has done so at least implicitly. For instance, respondents in disciplinary actions are not allowed to relitigate their guilt nor pursue theories of defense that have previously been rejected in underlying criminal proceedings. *In re McBride*, 938 S.W.2d 905, 907 (Mo. banc 1997); *In re Lurkins*, 374 S.W.2d 67, 68 (Mo. banc 1964). In other cases, both state court findings and disciplinary orders of another state have been used as the basis for disciplinary actions in this state. *In re Storment*, 873 S.W.2d 227, 230 (Mo. banc 1994) (foreign state disciplinary order can serve as the basis for discipline in Missouri); *In re Frick*, 694 S.W.2d 473, 477–78 (Mo. banc 1985) (state court findings are binding in state disciplinary proceedings).

Nevertheless, Respondent argues that this Court must engage in an independent review of the evidence and claims that use of the federal court findings constitutes imposition of "automatic discipline" under the Missouri Rules. Although Respondent correctly notes that this Court engages in *de novo* review of the evidence in a disciplinary proceeding, *In re Disney*, 922 S.W.2d 12, 13 (Mo.1996), she fails to recognize that the federal court findings are themselves the evidence in this case and that *de novo* review consists of a review of those findings. This Court need only review the federal court findings and determine whether those findings support disciplinary action under the Missouri Rules. This approach is no different from this Court's prior decisions holding that foreign disciplinary orders do not require discipline in Missouri, but may serve as the basis for disciplinary actions. *Storment*, 873 S.W.2d at 230; *In re Weiner*, 530 S.W.2d 222, 224 (Mo. banc 1975). In other words, the federal court sanctions have not been used as a basis for automatic discipline; the facts found in the federal proceedings have merely been used to make an independent determination of whether the Missouri Rules have been violated.

## B. Application of Offensive Non–Mutual Collateral Estoppel in the Instant Case

Respondent contends that even if the doctrine of offensive non-mutual collateral estoppel applies in disciplinary proceedings, the requirements of the doctrine were not met in this case. In this regard, four factors should be considered when applying non-mutual collateral estoppel: 1) the identity of the issues involved in the prior adjudication and the present action, 2) whether the prior judgment was on the merits, 3) "whether the party against whom collateral estoppel is asserted was a party or in privity with a party

to the prior adjudication," and 4) whether the party had a full and fair opportunity in the prior adjudication to litigate the issue for which collateral estoppel is asserted. *Oates,* 583 S.W.2d at 719. Respondent concedes that the second and third factors were present, so this Court will limit its discussion to the first and fourth factors.

## 1. Identity of the Issues

■ The very basis of collateral estoppel is the notion that once particular facts have been determined by a valid judgment, a party to that judgment cannot later relitigate those same facts in a subsequent lawsuit. *State v. Rodden,* 728 S.W.2d 212, 220 (Mo. banc 1987). Thus, identity of the factual issues is a critical factor for applying the doctrine of collateral estoppel. *Id.* Respondent claims that there is no identity of issues in the instant case because the federal decisions dealt with violations of the Federal Rules while this disciplinary action concerns violations of the different Missouri Rules. Once again, Respondent misconstrues the manner in which the federal decisions are being used. Collateral estoppel is being applied to the factual findings of the federal courts and not to the actual federal court sanctions. The factual findings of the federal courts clearly concern the very same conduct that is the basis for this disciplinary action; therefore, the identity of issues requirement is satisfied.

## 2. Full and Fair Opportunity to Litigate the Issues in Prior Litigation

■ Collateral estoppel can only be used to preclude a party from relitigating issues if that party had a full and fair opportunity to litigate those issues in a prior case. *Helm,* 820 S.W.2d at 498. This requirement of fairness is especially significant when a party that was not involved in the prior suit is seeking to preclude · relitigation of issues through application of non-mutual collateral estoppel. *Oates,* 583 S.W.2d at 719.

Respondent offers two reasons why the "full and fair opportunity" requirement of the collateral estoppel doctrine is not met in this case. First, she argues that she was not given notice that the federal court sanctions would result in automatic imposition of state discipline. Second, she claims that the federal courts did not provide her with sufficient process in reaching their decisions that would also support imposition of discipline under the Missouri Rules. As to Respondent's first point, she again fails to recognize that this Court has not adopted the federal court sanctions, but has merely adopted the federal court's factual findings. Respondent was on notice that the federal courts were making factual findings regarding her misconduct, and such notice was sufficient to allow her a full and fair opportunity to vigorously dispute those facts. With regard to Respondent's second point, she was granted an opportunity to respond to the allegations of misconduct in each of the four federal cases either by a hearing or by submission of briefs. *Platt v. Jack Cooper Transp.,* Co., 959 F.2d 91, 96 (8th Cir.1992); *White v. General Motors Corp.,* 908 F.2d 675, 686 (10th Cir.1990); *Pope v. Federal Express Corp.,* 138 F.R.D. 675, 676 (W.D.Mo.1990); *Perkins v. General Motors Corp.,* 129 F.R.D. 655, 657 (W.D.Mo.1990).

In addition, Respondent maintains that she has never had the opportunity to litigate the issue of whether she has violated the Missouri Rules. She is again mistaken. The hearing before the master and the proceedings before this Court afford her that opportunity. Although Respondent has not been allowed to relitigate the factual findings of the federal courts, she has been given a full opportunity to litigate the issue of whether those factual findings justify discipline under the Missouri Rules.

Finally, Respondent contends that she has not had the opportunity to litigate numerous defenses because the master found that she was collaterally estopped from engaging in discovery regarding the issues that had been decided by the federal courts. In fact, Respondent was only denied the opportunity to litigate those defenses pertaining to the federal court factual findings, and the master

was correct in denying Respondent the opportunity to engage in extensive discovery regarding those facts. Under these circumstances, Respondent has had a full opportunity to litigate the charges against her.

In sum, the application of offensive nonmutual collateral estoppel in this case is consistent with the underlying principles of protecting litigants from the burden of relitigating issues and the promotion of judicial economy. *Parklane Hosiery*, 439 U.S. at 326, 99 S.Ct. at 649. Under this doctrine, the federal court findings have properly been used as the basis for this disciplinary action.

## II. DOUBLE JEOPARDY

Respondent's next point is that the double jeopardy clause of the federal and state constitutions prohibits further disciplinary action by this Court because the federal courts have already sanctioned her for her misconduct. The federal court sanctions combined with separate state disciplinary sanctions, she explains, constitute multiple punishments for the same offenses. Even assuming, *arguendo,* that the federal court sanctions do constitute punishment for double jeopardy purposes, this Court holds that state disciplinary actions do not. Without state punishment, therefore, no double jeopardy violation exists.[1]

■ The United States Supreme Court has recognized that the determination of whether a civil penalty is considered *punishment* for purposes of double jeopardy analysis depends upon whether the penalty is remedial or punitive in nature. *United States v. Ursery*, 518 U.S. 2135, —— —— n. 2, 116 S.Ct. 2135, 2145–46 n. 2, 135 L.Ed.2d 549 (1996); *United States v. Halper*, 490 U.S. 435, 447–49, 109 S.Ct. 1892, 1901–02, 104 L.Ed.2d 487 (1989). A civil penalty is only considered *punishment* under the double

jeopardy clause when it "may not fairly be characterized as remedial, but only as a deterrent or retribution." *Ursery*, 518 U.S. at —— n. 2, 116 S.Ct. at 2145 n. 2; *Halper*, 490 U.S. at 449, 109 S.Ct. at 1902. It is incumbent on this Court, therefore, to assess whether attorney discipline is primarily remedial or punitive.

■ In that regard, this Court has repeatedly recognized that disciplinary actions are intended to protect the public and not to punish the individual attorney. *In re Coe*, 903 S.W.2d 916, 918 (Mo. banc 1995); *In re Harris*, 890 S.W.2d 299, 302 (Mo. banc 1994); *In re Westfall*, 808 S.W.2d 829, 836 (Mo. banc 1991). This is not to say that disciplinary actions have no punitive component. But, the overriding principle of disciplinary action is to "protect society and maintain the integrity of the legal profession." *In re Frank*, 885 S.W.2d 328, 333 (Mo. banc 1994). Thus, disciplinary actions are primarily remedial in nature.

It is true, as Respondent points out, that the Supreme Court has previously referred to disbarment as a *punishment. In re Ruffalo*, 390 U.S. 544, 550, 88 S.Ct. 1222, 1225, 20 L.Ed.2d 117 (1968) ("Disbarment, designed to protect the public, is a *punishment or penalty* imposed on the lawyer.") (emphasis added). However, the *Ruffalo* decision's use of the term *punishment* was synonymous with the term *penalty* and did not imply that disbarment was *punishment* for purposes of double jeopardy analysis. *Id.* As stated, the prior decisions of this Court clearly indicate that state attorney disciplinary action is primarily remedial in nature. As such, it does not constitute *punishment* for purposes of double jeopardy analysis. Thus, the double jeopardy prohibition is not applicable because Respondent has not been subjected to two *punishments* for the same misconduct.

## III. SANCTIONABLE MISCONDUCT

■ Having determined that federal court findings are an appropriate basis for state

---

1. Because we find that state disciplinary action is not punishment for double jeopardy purposes, it is unnecessary to address the distinct possibility that the dual sovereignty doctrine also prevents application of the double jeopardy clause. *See* generally, *Heath v. Alabama*, 474 U.S. 82, 88–89, 106 S.Ct. 433, 437–38, 88 L.Ed.2d 387 (1985); *State v. Durham*, 822 S.W.2d 453, 454 (Mo.App. 1991).

disciplinary action and that state attorney disciplinary actions do not constitute punishments that come within the purview of the double jeopardy prohibition, this Court must now consider the specific charges against Respondent. Because the individual counts are based respectively on the separate federal court cases, this Court will examine each federal case separately to determine if violations of the Missouri Rules follow from the federal court findings.

## A. Count One: White v. General Motors Corporation

In *White v. General Motors Corp.*, 699 F.Supp. 1485 (Kan.1988), Respondent represented two clients, Frederick White ("White") and Benjamin Staponski ("Staponski"), who brought claims against General Motors Corporation ("GM") for wrongful discharge and breach of contract. White also brought a separate claim against GM for slander. The district court found insufficient legal and factual bases to support these claims and ordered summary judgment for GM. Subsequently, the district court imposed sanctions against Respondent after finding that she had engaged in numerous acts of misconduct. *White v. General Motors Corp.*, 126 F.R.D. 563 (Kan.1989). The district court's findings in the *White* case may be summarized as follows:

1. Respondent failed to make a reasonable factual inquiry before filing the wrongful discharge complaint. *Id.* at 565. Both of her clients had previously executed documents releasing GM from employment-related claims, and she knew of the existence of the releases before she filed the wrongful discharge complaint. *Id.* Nevertheless, she filed the wrongful discharge complaint without first obtaining copies of the releases. *Id.*

2. Respondent pursued White's slander claim without making a reasonable inquiry to determine whether that claim was well-founded in fact. *Id.* at 565–66. The only proposed witness to the alleged slander had stated in an affidavit that she had not spoken with GM regarding White, but Respondent continued to press this claim after the affidavit had made it apparent that there was no factual basis to do so. *Id.*

3. Respondent disregarded well-established Kansas law by arguing that the determination of whether the facts surrounding the signing of the release constituted duress was initially a jury question, rather than a question of law. *Id.* at 566. Respondent's attempt to distinguish the court's previous decision on this issue was "specious" because it presented "a distinction without a difference." *Id.* In this way, Respondent advanced her claims without having a reasonable basis to believe that those claims were well-founded in law. *Id.*

4. Respondent's argument that the releases signed by plaintiffs were ambiguous, which was her excuse for continuing to use the releases, was not well-founded in fact or law. *Id.* Although she claimed that the releases were unclear regarding claims unknown at the time the releases were entered, the releases unequivocally discharged any and all claims, known or unknown. *Id.*

5. Respondent advanced the action for an improper purpose, not only by filing suit, but also by threatening to contact the media and government agencies before suit was ever filed. *Id.* at 567. The improper purpose was evident by the fact that she had failed to make a reasonable inquiry to determine that the claims were well-founded. *Id.*

6. Respondent needlessly increased the cost of litigation by making voluminous discovery requests that would not have been necessary had she made a reasonable inquiry to determine that the claims were well-founded in the first place. *Id.*

Based on these findings, the district court ordered Respondent to pay GM's costs and attorney's fees totaling $172,382.19. *White v. General Motors Corp.*, 908 F.2d 675, 678 (10th Cir.1990). The Tenth Circuit affirmed the district court's findings but remanded for reconsideration of the appropriate amount of

sanctions. *Id.* at 683. On remand, the district court reduced the amount of sanction to $50,000, *White v. General Motors Corp.*, 139 F.R.D. 178, 183 (Kan.1991), and the Tenth Circuit affirmed the sanction on appeal. *White v. General Motors Corp.*, 977 F.2d 499, 503 (10th Cir.1992).

Informant charges in Count I that the conduct for which Respondent was sanctioned in the *White* case also constitutes a violation of Rules 4–3.1, 4–3.2, 4–8.4(a), and 4–8.4(d) of the Missouri Rules.

Rule 4–3.1 forbids an attorney from bringing a proceeding or asserting an issue unless there is a non-frivolous basis for doing so. A claim "is not frivolous merely because the facts have not first been fully substantiated." Rule 4–3.1(Comment). However, continuing to pursue a claim once it becomes apparent that there is no factual basis to support that claim is clearly contrary to the requirements of the rule. By pursuing White's slander claim even after it became apparent that there was no factual basis for that claim, Respondent violated Rule 4–3.1.

Rule 4–3.2 requires an attorney to "make reasonable efforts to expedite litigation." In the *White* case Respondent 1) filed a wrongful discharge claim without first obtaining copies of the employee releases knowing that they existed, 2) pursued a slander claim after it had become apparent that there was no factual basis for the claim, 3) pursued issues of duress and ambiguity that were not well-founded in law, and 4) engaged in voluminous discovery to support claims that were not well-founded in fact or law. By engaging in that conduct, Respondent failed to "make reasonable efforts to expedite litigation" and thus violated Rule 4–3.2.

Rule 4–8.4(a) states that "[i]t is professional misconduct for a lawyer to ... violate or attempt to violate the Rules of Professional Conduct." By violating Rules 4–3.1 and 4–3.2, Respondent has necessarily violated Rule 4–8.4(a). See *In re Oberhellmann*, 873 S.W.2d 851, 854 (Mo. banc 1994).

Rule 4–8.4(d) states that "[i]t is professional misconduct for a lawyer to ... engage in conduct that is prejudicial to the administration of justice." By engaging in the conduct that constituted violations of Rules 4–3.1 and 4–3.2, Respondent also violated Rule 4–8.4(d).

**B. Count Two: Pope v. Federal Express Corporation**

In *Pope v. Federal Express Corp.*, 138 F.R.D. 675 (W.D.Mo.1990), the court found that Respondent attempted to use a forged document to support the plaintiff's sexual harassment claim. *Id.* at 680–82. This document was a computer generated report on which a forged handwritten note had been added. The note read: "Carol, *you* "feel" good! Danny." *Id.* at 677. The court also found that Respondent continued to rely on this document as support for her client's claim long after she learned that the document was a forgery. *Id.* at 683. In particular, she continued to engage in discovery, filed amended designations of experts, and submitted supplemental deposition testimony. *Id.* at 681. After rejecting Respondent's theory that the forged document was manufactured by some unknown person in an attempt to discredit her client, *Pope v. Federal Express Corp.*, 138 F.R.D. 684, 688–89 (W.D.Mo.1991), the court imposed monetary sanctions of $30,000. *Id.* at 690. The Eighth Circuit affirmed the district court's findings regarding Respondent's sanctionable conduct, but remanded for reconsideration of the appropriateness of the sanction. *Pope v. Federal Express Corp.*, 974 F.2d 982, 983–85 (8th Cir.1992). Subsequently, the Eighth Circuit affirmed the district court's reduced sanction of $25,000 noting that Respondent "knowingly offered a falsified document into evidence." *Pope v. Federal Express Corp.*, 49 F.3d 1327, 1328 (8th Cir.1995).

Informant charges in Count II that Respondent has violated Rules 4–3.1, 4–3.2, 4–3.3(a)(4), 4–3.4(b), 4–8.4(a), 4–8.4(c), and 4–8.4(d) of the Missouri Rules.

This Court holds that Respondent violated Rule 4–3.1 by pursuing a claim that lacked a non-frivolous basis because she pursued her client's claim after it had become apparent

that the claim was not well-founded in fact. Respondent also violated Rule 4–3.2 by failing to "make reasonable efforts to expedite litigation," because she continued to engage in discovery and to file documents with the court after it had become apparent that her client's claim was not well-founded in fact.

Respondent also violated Rule 4–3.3(a)(4), which forbids a lawyer from "knowingly ... offer[ing] evidence that the lawyer knows to be false" and requires a lawyer to "take reasonable remedial measures" if the "lawyer has offered material evidence and comes to know of its falsity." Not only did Respondent fail to take remedial measures when she became aware that the document was a forgery, but also she continued to make use of the document by offering it as evidence.

Further, Respondent violated Rule 4–8.4(c), which states that "[i]t is professional misconduct for a lawyer to ... engage in conduct involving dishonesty, fraud, deceit or misrepresentation," by continuing to depend upon a document that she knew to be a forgery. Respondent also violated Rules 4–8.4(a) and 4–8.4(d) by committing multiple rule violations and by engaging in conduct that is prejudicial to the administration of justice.

Informant also charged Respondent with a violation of Rule 4–3.4(b), which forbids a lawyer from falsifying evidence. Although Respondent certainly used the manufactured document in the proceedings, the *Pope* court did not find that she manufactured the document or assisted anyone in manufacturing the document. Because the origins of the manufactured document remain unclear, this Court finds no violation of Rule 4–3.4(b).

## C. Count Three: Perkins v. General Motors Corporation

In *Perkins v. General Motors Corp.*, 129 F.R.D. 655 (W.D.Mo.1990), Respondent represented her client in bringing a Title VII claim against GM. *Id.* at 656. After the court had reached a final judgment on the underlying claim, the court considered defendant's motion for sanctions and found that Respondent had engaged in numerous acts of misconduct. *Id.* at 656–57. The following is a brief summary of the district court's findings in the *Perkins* case:

1. Respondent made unsupported allegations that a GM manager had been the subject of prior sexual harassment charges. *Id.* at 660–62. She raised these allegations of misconduct in correspondence and interrogatories, as well as at trial, although she had failed to make a reasonable inquiry into the charges and had never produced any factual basis in support. *Id.*

2. Respondent made an affirmative misrepresentation regarding the date when she learned that a potential party's place of residence had changed. *Id.* at 663. Respondent stated in support of a motion to join that party that she had only recently learned that the party had moved out of Missouri. *Id.* Her statements were a misrepresentation, however, because she had indicated her knowledge of the party's relocation in a suit the year before. *Id.*

3. Respondent intentionally withheld the name of a senior GM manager who could potentially serve as a significant witness in her client's case. *Id.* at 664–66. Respondent failed to disclose the senior manager's name in response to GM's interrogatories and failed to later amend her responses to those interrogatories, all in an attempt to surprise GM at trial. *Id.* at 665–66.

4. Respondent deliberately misrepresented her ability to connect the testimony of several witnesses to her client. *Id.* at 669. The Court had advised Respondent that she could present testimony of witnesses regarding the work environment at GM only if she showed that her client was aware of the experiences of those witnesses. *Id.* She then presented several work environment witnesses with the assurance that she would connect those witnesses with her client's case, but she failed to make that connection with most of those witnesses. *Id.* In fact, no reasonable basis

existed for asserting that she could connect those witnesses to her client. *Id.*

5. Respondent filed a recusal motion that had no reasonable basis in fact or law. *Id.* at 672.

The Eighth Circuit subsequently affirmed the district court's findings regarding all aspects of Respondent's misconduct. *Perkins v. General Motors Corp.*, 965 F.2d 597, 600–02 (8th Cir.1992).

As a result of this misconduct, Informant charges in Count III that Respondent has violated Rules 4–3.1, 4–3.2, 4–3.3(a)(1), 4–3.4(a), 4–3.4(d), 4–8.4(a), and 4–8.4(d) of the Missouri Rules.

This Court holds that Respondent violated Rule 4–3.1 by 1) alleging the misconduct of a GM manager when that allegation had no factual support and 2) filing a frivolous recusal motion that lacked any basis in fact or law.

Respondent also violated Rule 4–3.2 by misrepresenting her knowledge of a potential party's residence and by withholding the identity of a witness in an attempt to surprise GM at trial. These actions prevented expeditious litigation by complicating the proceedings and causing unnecessary delays. *Perkins*, 129 F.R.D. at 664.

Rule 4–3.3(a)(1) states that "[a] lawyer shall not knowingly ... make a false statement of material fact or law to a tribunal." Respondent violated this rule by falsely representing to the court that she lacked knowledge of a potential party's change of residence and by falsely representing that she could connect the testimony of work environment witnesses to her client.

Rule 4–3.4(a) states that "[a] lawyer shall not ... unlawfully obstruct another party's access to evidence." Respondent violated this rule by intentionally withholding the name of a potentially helpful witness in an attempt to surprise the defendant at trial.

Rule 4–3.4(d) states that "[a] lawyer shall not ... fail to make reasonably diligent effort to comply with a legally proper discovery request by an opposing party." Respondent violated this rule by failing to diligently answer GM's interrogatories with disclosure of the name of a GM employee believed to have knowledge that could be imputed to GM.

The instances of Respondent's misconduct that have resulted in violations of the above noted rules also constitute violations of Rules 4–8.4(a) and 4–8.4(d).

### D. Count Four: Platt v. Jack Cooper Transport

In *Platt v. Jack Cooper Transport, Co.*, 959 F.2d 91 (8th Cir.1992), the Eighth Circuit found that Respondent had previously filed a frivolous sanctions motion against opposing counsel in the trial court and was pursuing a frivolous appeal from the denial of that motion. *Id.* at 96. The court also found that Respondent's actions were detrimental to her own client and noted that her actions were apparently based upon Respondent's personal animosity towards the district court judge and opposing counsel. *Id.* For this misconduct, the court imposed sanctions of $2500. *Id.* at 96–97.

Informant charges in this final Count that Respondent has violated Rules 4–3.1, 4–3.2, 4–8.4(a), and 4–8.4(d) of the Missouri Rules. We hold that Respondent violated Rule 4–3.1 by pursuing the sanction motion and appeal, which were proceedings for which she lacked a non-frivolous basis. In addition, Respondent violated Rule 4–3.2 because the frivolous sanctions motion and the frivolous appeal prevented the expeditious litigation of the case. Finally, the instances of Respondent's misconduct that constitute violations of the above noted rules also establish violations of Rules 4–8.4(a) and 4–8.4(d).

### IV. THE SANCTION

Respondent's commission of numerous violations of the Missouri Rules requires determination of the appropriate sanction. As a preliminary matter, the Court again emphasizes that "[t]he purpose of attorney discipline is to protect the public and maintain the

integrity of the legal profession." *Disney*, 922 S.W.2d at 15 (Mo. banc 1996). In order to further this purpose, "[t]his Court is authorized to administer four types of discipline: reprimand; indefinite suspension; suspension for a fixed period; and disbarment." *Frank*, 885 S.W.2d at 333 (Mo. banc 1994). Because disbarment is the most severe of these sanctions, it has typically been reserved for those instances where an attorney is clearly unfit to continue to practice law. *Disney*, 922 S.W.2d at 15; *Frank*, 885 S.W.2d at 334.

During the two day hearing before the master, Respondent submitted a substantial amount of mitigation evidence that can generally be characterized as pertaining to one of two relevant issues: 1) her character and reputation in the legal profession and 2) the previous sanctions imposed by the federal courts. ABA Standards for Imposing Lawyer Sanctions, Rules 9.32(g) and 9.32(k) ("ABA Standards"). As to the first class of mitigation evidence, Respondent submitted the testimony of numerous clients and colleagues regarding her character and reputation as well as numerous documents indicating various contributions she has made to the legal profession. Regarding the second class of mitigation evidence, Respondent testified about the negative impact that the federal court sanctions have had on her both personally and professionally.

■ Respondent also offered other evidence during the hearing before the master that does not qualify as mitigating evidence. In particular, she presented testimony of other attorneys regarding the propriety of her actions in the federal courts. However, this testimony was nothing more than a veiled attempt to collaterally attack the underlying federal court findings and is given no effect due to the application of collateral estoppel. She also testified about her 18 years of experience in the legal profession and 11 years in her area of specialization. Her ample experience is, however, an aggravating factor, if anything; it is inexperience that would perhaps serve as a mitigating factor. ABA

Standards Rule 9.32(f). Additionally, Respondent testified that she had not been subject to any further sanctions since the federal court sanctions mentioned in this decision. Due to Respondent's continuing refusal to acknowledge her wrongdoing, though, this record does not serve as a strong indicator of interim rehabilitation or remorse. ABA Standards Rules 9.32(j) and 9.32(l). Finally, in addition to presenting proper mitigation evidence regarding the negative impact of the federal sanctions, as mentioned above, Respondent also presented evidence intended to show that the sanctions exceeded the amount that she was able to pay. This evidence directly contradicts the federal court findings about her ability to pay, and collateral estoppel again precludes this Court's reconsideration of those findings.

Aggravating circumstances are also applicable in this case. Significantly, Respondent's actions in the federal courts consist of multiple offenses that tend to show a pattern of misconduct. ABA Standards Rules 9.22(c) and 9.22(d). Also, as noted above, Respondent's substantial experience in the legal profession weighs against her in these disciplinary proceedings rather than in her favor. ABA Standards Rule 9.22(i).

■ Ultimately, this Court's decision must turn on the precedent that when an attorney, with an intent to deceive the court, submits a false document, makes a false statement, or withholds material information, disbarment is the appropriate sanction. *Oberhellmann*, 873 S.W.2d at 856; *Storment*, 873 S.W.2d at 231; ABA Standards Rule 6.11. A lesser sanction of suspension or reprimand may be appropriate where the attorney merely knows of the misrepresentation or is merely negligent in allowing the misrepresentation to occur. ABA Standards Rules 6.12 and 6.13. But, the record in this case clearly establishes that Respondent intentionally submitted a false document, intentionally made false statements, and intentionally withheld material information. This misconduct is an affront to the fundamental and indispensable principle that a lawyer

must proceed with absolute candor towards the tribunal. In the absence of that candor, the legal system cannot properly function. Unfortunately, Respondent has shown a consistent willingness to forego this duty of candor to the tribunal. Her mitigating evidence does not serve to remedy this critical shortcoming. Under these circumstances, the protection of the public and the maintenance of the integrity of the legal profession require the most severe sanction available.

This Court orders Gwen G. Caranchini disbarred. Costs taxed to Respondent.

All concur.