**In re Lawrence Michael AUDLEY, Debtor.**

**State of Missouri ex rel., Jeremiah W. (Jay) Nixon, Plaintiff,**

**v.**

**Lawrence Michael Audley, Defendant.**

**Bankruptcy No. 99–22898–7–JTF.
Adversary No. 00–6035.**

United States Bankruptcy Court, D. Kansas.

Aug. 2, 2001.

Lawrence Michael Audley, pro se.

Patricia A. Molteni, Jefferson City, MO, for State of Missouri.

## MEMORANDUM OPINION [1]

JOHN T. FLANNAGAN, Bankruptcy Judge.

The State of Missouri obtained a fraud judgment against Lawrence Michael Audley for violating the Missouri consumer protection laws. After Audley filed bankruptcy, the State of Missouri filed an adversary complaint to have its judgment declared nondischargeable under § 523(a)(2)(A). Is Audley now collaterally estopped by the state court fraud judgment from requiring the State to prove fraud in this proceeding to avoid discharge of its claim? The court holds that Audley is collaterally estopped.[2]

---

1. Debtor appears *pro se*. The State of Missouri appears by its attorney, Patricia A. Mol- teni, Assistant Attorney General for the State of Missouri.

2. The court finds that this proceeding is core

## Summary Judgment

Audley filed his bankruptcy on November 11, 1999, and on February 22, 2000, the State of Missouri filed this adversary proceeding. The adversary is now before the court on the State's motion for summary judgment.[3] The State's motion includes a statement of uncontroverted facts annotated to the record as required by Fed. R. Bankr.P. 7056(e) and D. Kan. LBR 7056.1. But Audley's response to the motion does not challenge the statement of uncontroverted facts. Consequently, the facts set forth in the statement are deemed admitted as Rule 7056.1 dictates.[4]

## The State Court Proceedings

Those factual admissions show that the state court proceeding involved two consolidated law suits. In the first suit, the Missouri Office of the Attorney General sued Missouri Handicapped Workers, Inc., a company owned and operated by Lawrence Audley, for violations of Missouri's consumer protection laws. This suit, case number CV83–1938, was commenced in the Circuit Court of Jackson County, Missouri, in 1983. The State's petition alleged that in the course of selling light bulbs through telephone solicitations, Missouri Handicapped Workers, Inc., employed deceptions, false pretenses, and misrepresentations. The allegations further charged that Missouri Handicapped Workers, Inc., had concealed, suppressed, and omitted material facts when it told consumers that its products were manufactured and sold by handicapped persons when, in fact, they were not, and that sale proceeds benefitted public agencies, when, in fact, they did not.

This suit was settled by a Consent Injunction requiring the defendant to correct its sales presentation and to verify the handicap of its employees through the employee's physician. But Missouri Handicapped Workers failed to comply with the Consent Injunction, and on December 20, 1989, the Jackson County Circuit Court issued an order to show cause why the company should not be held in contempt.

At the same time, the State of Missouri filed a second suit against Missouri Handicapped Workers, Inc., in the Circuit Court of Jackson County, Missouri. But in this suit, case number CV89–32197, the State also joined Lawrence Audley as a defendant. This suit alleged that the defendants had violated Missouri's consumer protection laws by misrepresenting to consumers that the company and Audley had employed handicapped workers when, in fact, they had not. The suit prayed for a temporary restraining order, preliminary and permanent injunctions, restitution, penalties, and other relief.

The Missouri court consolidated both cases, numbers CV83–1938 and CV89–32197, and on August 27 and August 28, 1991, conducted a trial. Audley was represented by counsel at the trial and gave testimony for the defense. On February 13, 1992, Jackson County Circuit Judge Lee E. Wells issued extensive Findings of Fact and Conclusions of Law determining that Audley had violated Missouri's consumer protection laws (specifically Chapter 407 of the Missouri Revised Statutes). The ruling ordered Audley, and others, to

under 28 U.S.C. § 157 and that the court has jurisdiction under 28 U.S.C. § 1334 and the general reference order of the District Court effective July 10, 1984 (D. Kan. Rule 83.8.5).

3.  Doc. # 14.

4.  D. Kan. LBR 7056.1 states: "All material facts set forth in the statement of the movant will be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party."

pay the following amounts: [5]

a. $5,000 in civil penalties payable to the State's Merchandising Practices Revolving Fund;

b. $200,000 in restitution payable to the State's Merchandising Practices Restitution Fund for distribution to the defrauded consumers;

c. $20,000 in additional statutory penalty, representing 10% of restitution, payable to the State's Merchandising Practices Revolving Fund; and

d. $10,400 in costs of investigation and prosecution incurred by the State payable to the State's Merchandising Practices Revolving Fund.

Audley appealed the decision and on June 18, 1992, the Missouri Court of Appeals for the Western District dismissed the appeal of Judge Wells's decision as untimely filed.

### Section 523(a)(2) Actual Fraud

■ Judge Wells's monetary award is the debt that Missouri seeks to have declared nondischargeable in this adversary proceeding under 11 U.S.C. § 523(a)(2)(A).

■ Section 523(a)(2)(A) of the Bankruptcy Code excepts from discharge any debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." Normally, to succeed under this section, a creditor must prove by a preponderance of the evidence [6] that:

(1) the debtor knowingly committed actual fraud or false pretenses, or made a false representation or willful misrepresentation;

(2) the debtor had the intent to deceive the creditor;

(3) the creditor relied on the debtor's conduct;

(4) the creditor's reliance was justifiable; and

(5) the creditor was damaged as a proximate result.[7]

But the State contends that the elements satisfying § 523(a)(2)(A) have already been proven in the state court suits finding Audley violated the Missouri consumer protection laws, therefore making it unnecessary for the State to offer further proof of the fraud required to satisfy § 523(a)(2)(A). Whether this is so requires an examination of whether the state court necessarily addressed issues and made factual determinations which established that Audley's conduct was fraudulent within the meaning of § 523(a)(2)(A).

### Misrepresentations

The nondischargeability statute requires a showing of actual fraud or false pretenses or false representation or willful misrepresentation.

Judge Wells specifically found that Audley had falsely represented to consumers, in both telephone solicitations made by his employees and on invoices sent to consum-

---

**5.** Motion by the State of Missouri for Summary Judgment (Doc. # 14) at 3.

**6.** *Grogan v. Garner,* 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)(holding that the standard of proof for § 523(a) exceptions to discharge is the ordinary preponderance-of-the-evidence standard).

**7.** *Spilker v. Braun,* Adv. No. 95–6194–JAR, Mem. Op. filed April 30, 1999 (citing *Field v.*

*Mans,* 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995)(rejecting the stricter standard of reasonable reliance as to the fourth element and finding that § 523(a)(2)(A) requires justifiable reliance; reliance is not justifiable if the recipient of the misrepresentation could have appreciated its falsity at the time by the use of his senses)).

ers, that all of the employees of his company, Missouri Handicapped Workers, Inc., were handicapped, when, in fact, a significant number of them were not.[8] Additionally, the judge found that Audley's invoices falsely represented to customers that his company was "devoted exclusively to hiring *ONLY* handicapped people" when, in fact, the company was not.[9]

Judge Wells specifically found that there was clear and convincing evidence showing that all solicitations were false and that the defendants misrepresented the handicapped capacity of the defendants' employees:

> The Court finds by clear and convincing evidence that each and every solicitation made by each employee since January 1, 1986 was an act, use or employment of deception, fraud, false pretense, false promise, misrepresentation or unfair practice or the concealment, suppression or omission of material fact in connection with the sale or advertisement of merchandise in trade or commerce by defendants.
>
> . . . .
>
> The Court finds that the defendants knowingly and intentionally failed to confirm the existence and/or extent of the handicap claimed by the prospective employees, therefore, each and every solicitation made by their employees was an act, use or employment of deception, fraud, false pretense, false promise, misrepresentations or unfair trade practice or the concealment, suppression or admission [sic] of a material fact in connec-

tion with the sale or advertisement in trade or commerce by defendants.[10]

**Intent to Deceive**

Section 523(a)(2)(A) also requires proof of intent to deceive. Judge Wells found that Audley had "knowingly, continuously and repeatedly" hired people as employees of Missouri Handicapped Workers, Inc., whom he knew were not handicapped.[11] He also found that Audley had encouraged job applicants, who did not regard themselves as being handicapped, to declare any physical ailment that they may have had, regardless of how remote, as a "handicap" for purposes of employment, knowing that these physical or mental impairments did not substantially limit any of the applicant's major life activities.[12] And he found that Audley "knowingly and intentionally" failed to confirm the existence and/or extent of the handicaps claimed by prospective employees.[13] In addition, the court found that Audley was the president of Missouri Handicapped Workers, Inc.; that he oversaw its daily function; that he was responsible for developing and maintaining all company literature and training material; that he controlled and influenced the company;[14] and that he hired, trained and supervised the employee responsible for recruiting, hiring, training and supervising the sales staff.[15] The court found that "Missouri Handicapped Workers, Inc. was used as a subterfuge in order to sell merchandise to the public at a very large markup by convincing customers that they would be helping what customers per-

---

8. Judge Wells's Findings of Fact and Conclusions of Law (Ex. I to the State's motion for summary Judgment, Doc. # 14) at Findings of Fact ¶¶ 8–10, 12, 14–16, 30, 33, and 39–41.

9. *Id.* at ¶ 14.

10. *Id.* at ¶¶ 26, 28.

11. *Id.* at ¶ 17.

12. *Id.* at ¶ 18.

13. *Id.* at ¶¶ 21, 28.

14. *Id.* at ¶¶ 30, 39.

15. *Id.* at ¶¶ 40–41.

ceived as 'visibly' handicapped persons,"[16] and in this way, Audley used the corporation "as a subterfuge to perpetrate fraud."[17] This court concludes that Judge Wells's findings about Audley's state of mind establish that Audley made the above misrepresentations with the intent to deceive.

## Justifiable Reliance

Section 523(a)(2)(A) also requires a showing of justifiable reliance on the misrepresentations. Judge Wells found that Audley's "customers relied upon the solicitation and invoice in purchasing merchandise from defendants."[18] The court further found that customers "were motivated to buy defendants [sic] merchandise because customers believed that they were helping the 'visibly' handicapped."[19] Because Judge Wells found that these misrepresentations were made to consumers through telephone solicitations and through invoices provided to them with their merchandise order,[20] customers never had the opportunity to observe the purported employee "handicaps" for themselves. Thus, the customers' reliance on the misrepresentations that the employees were "visibly" handicapped was justified.

## Resulting Damages

Finally, the statute requires a showing of damages proximately caused by the misrepresentations. On this point Judge Wells determined that the consumers suffered a loss as a result of the misrepresen-

tations. Specifically, he held that customers who had purchased products from Missouri Handicapped Workers, Inc., were entitled to restitution in the amount of the purchase price of the products.

## Collateral Estoppel

■ As the foregoing review shows, Judge Wells's findings satisfy the elements of proof required by § 523(a)(2)(A). And the United States Supreme Court has firmly established in *Grogan v. Garner*[21] that "collateral estoppel principles do indeed apply in discharge exception proceedings pursuant to § 523(a)."[22]

■ Furthermore, under *Marrese v. American Academy of Orthopaedic Surgeons*,[23] a 1985 decision of the United States Supreme Court, the applicable collateral estoppel law is that of the state entering the judgment at issue. Under 28 U.S.C. § 1738 and the foregoing decision, federal courts must give full faith and credit to that court's judicial proceeding.

■ Under Missouri law, the doctrine of collateral estoppel provides that an issue judicially determined in one action may not be relitigated in another action.[24] When deciding whether collateral estoppel applies, Missouri courts consider the following four factors:

1. Whether the issue decided in the prior adjudication was identical with the issue presented in the present action;

**16.** *Id.* at ¶ 35.

**17.** *Id.* at ¶ 39.

**18.** *Id.* at ¶ 22.

**19.** *Id.* at ¶ 23.

**20.** *Id.* at ¶¶ 2–4, 12.

**21.** 498 U.S. at 284, 111 S.Ct. 654 (1991).

**22.** *See also In re Wallace*, 840 F.2d 762, 765 (10th Cir.1988)(finding that state court find-

ing of embezzlement precluded relitigating of fraud question under § 523(a)(4)).

**23.** 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985).

**24.** *Shahan v. Shahan*, 988 S.W.2d 529, 532 (Mo. en banc 1999) (citing *Green v. City of St. Louis*, 870 S.W.2d 794, 797 (Mo. en banc 1994)).

2. Whether the prior adjudication resulted in a judgment on the merits;

3. Whether the party against whom collateral estoppel is asserted was a party or was in privity with a party to the prior adjudication; and

4. Whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit.[25]

Missouri law allows a plaintiff to assert collateral estoppel "offensively" against a defendant to prevent that defendant from relitigating an issue decided in previous litigation to which the defendant was a party or in privity with a party.[26]

In examining the first factor, identity of the issues, a state court's factual findings concerning the same conduct that forms the basis for the later lawsuit satisfy the identity-of-issues requirement.[27] In the Jackson County District Court lawsuit, the issue was whether Audley's conduct constituted fraud. The issue to be precluded in this case is substantially the same as the issue in the state court action; to wit, fraud.

In essence, the State would have the burden of proving the same fraudulent conduct in this adversary as it did in its consumer protection suit. Accordingly, the factual and legal determinations made by the state court judge satisfy the elements for nondischargeability under § 523(a)(2)(A) and also satisfy the identity-of-issues requirement for collateral estoppel.

The court also finds that no genuine issue of material fact exists regarding the next three collateral estoppel factors. Audley's prior adjudication in the state court action resulted in a "judgment on the merits" inasmuch as the state judge ruled directly on the issues raised in the State's petition. Audley's appeal of that judgment was dismissed. Audley also was clearly "a party in the prior adjudication," as he was a named defendant, and the court rendered judgment against him. Finally, it is undisputed that Audley had a "full and fair opportunity to litigate" these issues because the court conducted a trial at which Audley testified and was represented by counsel.

■ Accordingly, the court finds that Audley is collaterally estopped from relitigating the issue of fraud. And the State of Missouri is entitled to summary judgment on its complaint requesting a determination that the judgment debt resulting from Audley's fraud is nondischargeable under § 523(a)(2)(A), including the $200,000 in restitution, the $20,000 in 10% restitution, the $5,000 in civil penalties, and the $10,400 in costs of investigation and prosecution.[28]

■ As to the State's alternative argument that the debts for civil penalties and 10% restitution are not dischargeable because those debts fall within 11 U.S.C. § 523(a)(7), the court agrees. It is undisputed that those judgment debts are "for a fine, penalty, or forfeiture payable to and

---

**25.** *Id.* at 532–33 (citing *Oates v. Safeco Ins. Co.,* 583 S.W.2d 713, 719 (Mo. en banc 1979)).

**26.** *In re Caranchini,* 956 S.W.2d 910, 912 (Mo. en banc 1997).

**27.** *Land Clearance for Redevelopment Authority v. United States Steel,* 911 S.W.2d 685, 688 (Mo.App.1995).

**28.** Section 523(a)(2)(A) prevents the discharge of all liability arising from fraud, including, for example, treble damages and attorneys' fees and costs. *Cohen v. de la Cruz,* 523 U.S. 213, 214–15, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998). It is not limited to the restitutionary portion of the debt. *Id.* at 222–23, 118 S.Ct. 1212.

for the benefit of a governmental unit" and "not compensation for actual pecuniary loss"; thus, the court finds that the State is entitled to summary judgment on its claim of nondischargeability as to those debts on this separate ground as well.

This court has considered Audley's arguments that the doctrine of latches should apply and that Judge Wells conducted "corrupt litigation," but the court finds them to be without merit.

IT IS THEREFORE ORDERED that the State of Missouri's motion for summary judgment is GRANTED. The debt for $235,400 is nondischargeable.

This Memorandum shall constitute findings of fact and conclusions of law under Rule 7052 of the Federal Rules of Bankruptcy Procedure and Rule 52(a) of the Federal Rules of Civil Procedure. A judgment based on this ruling will be entered on a separate document as required by Rule 9021 of the Federal Rules of Bankruptcy Procedure and Rule 58 of the Federal Rules of Civil Procedure.

IT IS SO ORDERED.