In re Lawrence Michael
AUDLEY, Debtor.

State of Missouri ex rel. Jeremiah W.
(Jay) Nixon, Plaintiff—Appellee,

v.

Lawrence Michael Audley, Defendant—
Appellant.

BAP No. KS–01–063.
Bankruptcy No. 99–22898.
Adversary No. 00–6035.

United States Bankruptcy Appellate Panel
of the Tenth Circuit.

March 28, 2002.

Lawrence Michael Audley, pro se.

Stephen P. Wilson, Assistant Attorney General (Jeremiah W. (Jay) Nixon, Attorney General, Patricia A. Molteni and Dale Youngs, Assistant Attorneys General, with him on the brief), Jefferson City, Missouri, for Plaintiff—Appellee.

Before McFEELEY, Chief Judge, CORNISH, and CORDOVA[1], Bankruptcy Judges.

## OPINION

MCFEELEY, Chief Judge.

The Appellant/Debtor, Lawrence Michael Audley, ("Debtor") appeals an Order by the United States Bankruptcy Court for the District of Kansas that granted summary judgment to the state of Missouri ("Missouri"), finding that a $235,000 judgment debt ("claim") owed by the Debtor to Missouri was nondischargeable under 11 U.S.C. §§ 523(a)(2)(A), (a)(7). The Debtor argues that the bankruptcy court erred when it found that the Debtor was collaterally estopped by the state proceeding from relitigating the nondischargeability of Missouri's claim. For the following reasons, we affirm the bankruptcy court.

### Background

The Debtor was president of Missouri Handicapped Workers ("MHW"). In 1991, Missouri tried MHW and the Debtor for violation of Missouri's consumer protection statutes ("state trial").[2] The state trial lasted two days. At the state trial the

---

1. Honorable Donald E. Cordova, United States Bankruptcy Judge, United States Bankruptcy Court for the District of Colorado, sitting by designation.

2. The trial was a consolidation of two law suits. Both law suits were filed in the Circuit Court of Jackson County, Missouri. The first suit was filed in 1983 against MHW. The second was filed in 1989 against MHW and the Debtor. Both suits alleged that the defendants had violated Missouri consumer protection laws by misrepresenting to consumers that the company and the Debtor had employed handicapped workers when in fact, they had not. The first suit resulted in a Consent Injunction. When MHW did not comply, the Circuit Court issued an order to show cause why MHW should not be held in contempt. After the second suit was filed, the cases were consolidated.

Debtor testified and was represented by counsel. On February 13, 1992, a Missouri state court ("state court") filed Findings of Facts and Conclusions of Law in which it found that the Debtor was liable for numerous violations of Missouri's consumer protection statutes. The state court ordered the Debtor to pay $235,000 for restitution, civil penalties, and costs.[3] The Debtor appealed this decision. On June 18, 1992, the Missouri Court of Appeals for the Western District dismissed the Debtor's appeal as untimely.

On November 11, 1999, the Debtor filed a Chapter 7 petition in the District of Kansas. Missouri timely filed an adversary proceeding on February 22, 2000, alleging that its claim was nondischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A) and/or (a)(7).[4] The Debtor appeared pro se in the adversary proceeding. Missouri's summary judgment motion included a statement of uncontroverted facts. The Debtor filed a response arguing that the state trial had violated his constitutional rights. The bankruptcy court granted Missouri's summary judgment motion in the adversary proceeding, finding that there were no controverted facts, the factual findings of the state judgment satisfied all the elements of the fraud that Missouri had the burden of proving under § 523(a)(2)(A), the Debtor was collaterally estopped from relitigating those factual findings, and the judgment was nondischargeable pursuant to § 523(a)(2)(A). *State of Missouri ex rel. Jeremiah W.*

*(Jay) Nixon v. Audley (In re Audley)*, 268 B.R. 279 (Bankr.D.Kan.2001). The bankruptcy court found that the debts for civil penalties and restitution were also nondischargeable under 523(a)(7). *Id.*

The Debtor timely appealed the bankruptcy court's final Order, and all parties have consented to this Court's appellate jurisdiction. *See* 28 U.S.C. §§ 158(a)(1) & (c)(1); Fed. R. Bankr.P. 8001(a) & 8002(a).

## Discussion

On appeal, the Debtor argues that summary judgment was inappropriate because not only were there contested factual issues before the bankruptcy court, but the state court proceeding violated his constitutional rights, and therefore, the state court's findings should not have had preclusive effect in the bankruptcy court.

The Bankruptcy Code provides for summary judgment through Federal Rule of Bankruptcy Procedure 7056, which adopts Federal Rule of Civil Procedure 56. Summary judgment is appropriate when, after consideration of the record, the court determines that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The movant has the burden of establishing that summary judgment is appropriate. *Wolf v. Prudential Ins. Co. of Am.*, 50 F.3d 793, 796 (10th Cir.1995). We review a grant of summary judgment de novo and evaluate the record in the light most favorable to the opposing party. *Phelps v. Hamilton*, 122 F.3d 1309, 1317–18 (10th Cir.1997). If

---

3. The sum breaks down as follows:
 (1) $200,000 in restitution payable to the state's merchandising practices restitution fund for distributions to defrauded customers;
 (2) $20,000 in statutory penalties, representing 10% of restitution, and payable to the state's merchandising practices revolving fund;
 (3) $5,000 in civil penalties payable to the state's merchandising fund;

(4) $10,400 in reimbursement to the state for the costs of investigation and prosecution and payable to the state's merchandising practices revolving fund.

4. All future statutory references are to Title 11 of the United States Code unless otherwise stated.

no genuine issue of material fact is in dispute, we must decide whether the bankruptcy court correctly applied the law. *Id.* at 1318.

 In this case, the central issue is whether the collateral estoppel doctrine precluded the Debtor from litigating in bankruptcy court the nondischargeability of Missouri's claim. Collateral estoppel, or issue preclusion, is a doctrine that prohibits the relitigation between the same parties of issues of ultimate fact that have been "determined by a valid and final judgment." *Phelps*, 122 F.3d at 1318. Collateral estoppel applies in bankruptcy proceedings to determine the dischargeability of a debt. *Grogan v. Garner*, 498 U.S. 279, 284–85 n. 11, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). When a federal court reviews the preclusive effect of a state court judgment, it is directed by the mandates of the Full Faith and Credit Statute[5] to look to the preclusion law of the state in which the judgment was rendered. *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985) (holding that in cases exclusively within federal jurisdiction, state law determines the preclusive effect of a prior state court judgment unless an exception to the Full Faith and Credit Statute applies). While a bankruptcy court determines whether a debt is nondischargeable under § 523, under the collateral estoppel doctrine a state court judgment may preclude the relitigation of settled facts.[6] *Klemens v. Wallace (In re Wallace)*, 840 F.2d 762, 764–65 (10th Cir. 1988).

 As the state trial took place in Missouri, the Missouri collateral estoppel doctrine applied. Missouri courts permit a party to assert collateral estoppel when the following elements are met:

1) Whether the issue decided in the prior adjudication was identical with the issue presented in the present action;

2) whether the prior adjudication resulted in a judgment on the merits;

3) whether the party against whom collateral estoppel is asserted was a party or was in privity with a party to the prior adjudication; and

4) whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit.

*Shahan v. Shahan*, 988 S.W.2d 529, 532–33 (Mo.1999) (en banc). Missouri recognizes "offensive" collateral estoppel. *In re Caranchini*, 956 S.W.2d 910, 912 (Mo.1997) (en banc). Collateral estoppel is used "offensively" when a plaintiff invokes the doctrine to estop a defendant from relitigating issues that have been determined by a prior valid judgment. *Id.* (citing *Parklane*

5. The Full Faith and Credit Statute codifies the Full Faith and Credit Clause of the Constitution, Art. IV, § 1. *Phelps*, 122 F.3d at 1318. The Full Faith and Credit Statute provides in pertinent part: "The . . . judicial proceedings of any court of any such State . . . shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State . . . ." 28 U.S.C. § 1738.

6. A federal court may not apply the collateral estoppel doctrine under the state law rules of preclusion if the party who opposes collateral estoppel has not had a full and fair opportunity to litigate the issue in the prior action. *Allen v. McCurry*, 449 U.S. 90, 95, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). Whether a party had a full and fair opportunity to litigate may be examined by questioning whether the proceeding satisfies the "minimum procedural requirements of the Fourteenth Amendment's Due Process Clause." *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 481, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982). Here, the Debtor's constitutional claims do not include a claim that he was denied procedural due process.

*Hosiery Co. v. Shore,* 439 U.S. 322, 329, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979)).

The sole issue before the bankruptcy court was whether there was an identity of issues between the state court judgment and the adversary proceeding. The other elements of collateral estoppel were not contested.

 The identity of issues requirement is satisfied if the issue to be precluded in the bankruptcy proceeding was considered and decided on its merits in the state court proceeding. *See Phelps,* 122 F.3d at 1320. In this case, Missouri asserted that its claim was nondischargeable under § 523(a)(2)(A).[7] Before a bankruptcy court will find a debt nondischargeable under this section, a creditor must prove the following elements by a preponderance of the evidence: 1) the debtor knowingly committed actual fraud or false pretenses, or made a false representation or willful misrepresentation; 2) the debtor had the intent to deceive the creditor; and 3) the creditor relied on the debtor's representation. *Fowler Bros. v. Young (In re Young),* 91 F.3d 1367, 1373 (10th Cir.1996). The creditor's reliance must have been justifiable, *Field v. Mans,* 516 U.S. 59, 74–75, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995), and the creditor must have been damaged as a result, *Young,* 91 F.3d at 1373. For the state court judgment to have collateral estoppel effect on any of these elements, the state court must have found a violation of the respective element by a preponder-

ance of the evidence. *See, e.g., Nelson v. Tsamasfyros (In re Tsamasfyros),* 940 F.2d 605, 607 (10th Cir.1991) (holding that when a state court found that the debtor had breached a fiduciary duty to a creditor, and that the breach was attended by fraud and recklessness, the debtor was collaterally estopped from arguing that his debt was not nondischargeable under § 523(a)(2)(A)).

 We agree with the bankruptcy court that the state court proceeding collaterally estopped the Debtor from relitigating the issue of the nondischargeability of Missouri's claim under § 523(a)(2)(A). In the state proceeding, the Debtor was found liable for violating § 407.020 of the Missouri statutes.[8] In Missouri, a party may not be held liable for a violation of that section "unless the fact finder determines that he willfully and knowingly engaged in conduct that is unfair and that he did so with the specific intent to defraud his victim by means of the unfair practice." *State v. Shaw,* 847 S.W.2d 768, 776 (Mo. 1993) (en banc). The state court proceeding found by clear and convincing evidence, a standard higher than the one required of a creditor in a nondischargeability proceeding, that the employees of MHW had knowingly and intentionally deceived consumers and that those consumers had justifiably relied on MHW's misrepresentations and had suffered a loss due to those misrepresentations.[9] The

7. The Debtor has not argued that the elements of § 523(a)(7) were not met.

8. Section 407.020 provides in pertinent part:

The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce or the solicitation of any funds for any charitable pur-

pose, as defined in section 407.453, in or from the state of Missouri, is declared to be an unlawful practice.

Mo.Rev.Stat. § 407.020 (1986) (current version at § 407.020 (2001)).

9. In its Findings of Fact, the state court found in pertinent part:

26 The Court finds by clear and convincing evidence that each and every solicitation made by each employee since January 1, 1986 was an act, use or em-

state court further concluded that these acts violated state law.[10] Both the state and the bankruptcy proceedings involved the issue of whether the Debtor engaged in fraud. Had these factual issues been litigated in the adversary proceeding in bankruptcy court, Missouri would have had the burden of proving the same fraudulent conduct in the bankruptcy court as it had in the state proceeding.

Although the Debtor contends that collateral estoppel should not have applied because there were controverted factual issues that he presented before the bankruptcy court, in the record before us there is no evidence that the Debtor presented the court with any relevant disputed factual issues.[11] Debtor's principal argument before the bankruptcy court was that the state court decision violated his federal constitutional rights.[12] However, this argument is a collateral attack on the state court judgment, not evidence of disputed factual issues.

On appeal Debtor raises the same argument, asserting that because the state court proceeding violated his constitutional rights to a fair trial and his constitutional protection against cruel and unusual punishment, its findings should not have collateral estoppel effect. The Debtor asserts that his constitutional rights were

> ployment of deception, fraud, false pretense, false promise, misrepresentation or unfair practice or the concealment, suppression or omission of material fact in connection with the sale or advertisement of merchandise in trade or commerce by defendants.
> ....
> 35. The court finds that MHW was used as a subterfuge in order to sell merchandise to the public at a very large markup by convincing customers that they would be helping what the customers perceived as "visibly" handicapped persons.
> ....
> 39. The Court finds that defendant Audley controlled and influenced MHW and Irish and that the corporations were used as a subterfuge to perpetrate fraud.
>
> Findings of Fact and Conclusions of Law at 7–9, *in* Appellee's App. at 200–202.

10. In its Conclusions of Law, the state court found in pertinent part:
> 2. Section 407.020 RSMo 1986 broadly prohibits the use of any deception, false promise or misrepresentation in connection with the sale of any merchandise.
> ....
> 4. The burden of proof on Plaintiff is one of preponderance of the evidence, but the Court finds and concludes that the evidence herein is clear, cogent and convincing.... [I]t is this Court's sole purpose to decide whether the defendants, by their conduct, engaged in practices in violation of Section 407.020, and this

> Court does so find that defendants have violated Section 407.020.
>
> Findings of Fact and Conclusions of Law at 14, *in* Appellee's App. at 207.

11. Pursuant to the bankruptcy court's local rules, "[a]ll material facts set forth in the statement of the movant will be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party." D. Kan. L.B.R. 7056.1.

12. The Debtor made the two following statements in his Answer to Motion by the State of Missouri for Summary Judgment and My Motion to Dismiss:
> 2. I respectfully request the Court to discharge this debt under the "Latches [sic] Doctrine" or within any other power it has, because of the corrupt litigation by Judge Lee Wells and Attorney General Wm. Webster and the stale demand by Attorney General Nixon.
> 3. In my first meeting with Attorney Wm. Turner, I ask [sic] if the statue [sic] of limitations had ran [sic] out on this debt in both Kansas and Missouri, and he said "it didn't make any difference", [sic] he advised me ardently that he "was absolutely certain that this debt would be discharged after he reviewed my judgment."
>
> Answer to Motion, *in* Appellee's App. at 225. These two statements are the basis for the Debtor's argument that he contested Missouri's statement of facts.

implicated because the state court judge was corrupt and the state court misread the law defining disabilities. The Debtor concludes that the bankruptcy court should have independently reviewed the state trial transcripts to determine whether Missouri had any valid claim.

■ Without making any specific findings with regard to the Debtor's constitutional argument, the bankruptcy court found it to be without merit. We find that we are barred from considering the Debtor's constitutional arguments because we lack subject matter jurisdiction under the *Rooker–Feldman* doctrine.

■ The *Rooker–Feldman* doctrine bars "a party losing in state court ... from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Johnson v. De Grandy,* 512 U.S. 997, 1005–06, 114 S.Ct. 2647, 129 L.Ed.2d 775 (1994). Only the United States Supreme Court has jurisdiction to review state court judgments. *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 476, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). A federal district court cannot review matters actually decided by a state court or provide relief that is "inextricably intertwined" with the state court decision. *See id.* at 482 n. 16, 103 S.Ct. 1303. "A claim is inextricably intertwined if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." *Charchenko v. City of Stillwater,* 47 F.3d 981, 983 (8th Cir.1995). If adjudication of a claim in federal court would require the court to determine that a state court judgment was erroneously entered or was void, the claim is inextricably intertwined with the merits of the state court judgment. *See, e.g., Jordahl v. Democratic Party of Va.,* 122 F.3d 192, 202

(4th Cir.1997). " 'The fundamental and appropriate question to ask is whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment.' " *Collins v. Kansas,* 174 F.Supp.2d 1195, 1198 (D.Kan.2001) (quoting *Bisbee v. McCarty,* 3 Fed.Appx. 819, 822–23 (10th Cir.2001) (further quotation omitted)).

We find that the Debtor's constitutional claims are inextricably intertwined with the state court judgment. Here the Debtor asks this Court to independently review the trial transcript in order to determine the validity of the fraud judgment on the grounds that his rights were violated because the state court judgment and the state attorney general were corrupt. Basically, he asks for appellate review of the state court judgment. This is precisely what the *Rooker–Feldman* doctrine prohibits. We cannot examine the Debtor's constitutional argument without reviewing the state court decision.

### Conclusion

For the reasons set forth above, the bankruptcy court's judgment is AFFIRMED.