FILED
U.S. Bankruptcy Appellate Panel
of the Tenth Circuit

**August 15, 2025**

**Anne M. Zoltani**
**Clerk**

NOT FOR PUBLICATION[1]

## UNITED STATES BANKRUPTCY APPELLATE PANEL

### OF THE TENTH CIRCUIT

| | |
|---|---|
| IN RE CORY JAY MARKHAM,<br><br>Debtor.<br><br>——————————————<br><br>CORY JAY MARKHAM,<br><br>        Plaintiff - Appellant,<br>v.<br><br>AUTO CYCLE EXCHANGE SERVICES,<br>INC. and KURT DIMICK,<br><br>        Defendants - Appellees. | BAP No. CO-24-19<br><br><br><br>Bankr. No. 21-13435<br>Adv. No. 24-01045<br>Chapter 7<br><br><br><br>OPINION |

————————————————————

Appeal from the United States Bankruptcy Court
for the District of Colorado

————————————————————

Before **SOMERS**, **JACOBVITZ**, and **PARKER**, Bankruptcy Judges.

————————————————————

**JACOBVITZ**, Bankruptcy Judge.

————————————————————

On October 15, 2024, Appellant filed a notice of appeal appealing the Bankruptcy Court's *Order on Plaintiff's Motion for Partial Summary Judgment and Defendants' Cross-Motion for Summary Judgment* (the "SJ Order").[2] At issue is whether Appellees

---

[1] This unpublished opinion may be cited for its persuasive value, but is not precedential, except under the doctrines of law of the case, claim preclusion, and issue preclusion. 10th Cir. BAP L.R. 8026-6.

[2] The Bankruptcy Court extended the time for Appellant to file his notice of appeal to October 15, 2024. Bankr. ECF No. 31.

violated the automatic stay by filing a motion for contempt in state court seeking a money judgment against and incarceration of Appellant (who was then a debtor) for violating a state court order. Resolution of this issue depends on whether the police and regulatory power exception to the automatic stay set forth in § 362(b)(4)[3] exempts Appellees' action from the stay.

## I.     Background Facts and Procedural History

In 2016, Appellant Cory Markham sued Appellees Auto Cycle Exchange Services, Inc. ("Auto Cycle") and Kurt Dimick in Colorado state court (the "State Court Action"). Appellant had worked for Auto Cycle at one time, and Appellees describe the State Court Action as "a commercial dispute."

### a.     Settlement of the State Court Action and Subsequent Breach

On May 10, 2016, Appellant and Appellees agreed to settle the State Court Action by way of a confidential stipulation (the "Stipulation").[4] The following day, they filed a joint notice of settlement and a motion to stay the State Court Action, which the state court granted. The Stipulation provided that "[t]he parties agree not to disparage or impugn the other and will not encourage others to do so."[5] The Stipulation also provided, in relevant part, that "[i]f any Party is found to be in breach of the terms and conditions of

---

[3] Unless otherwise indicated, all statutory references are to Title 11 of the United States Code, 11 U.S.C. § 101 et seq., known as the United States Bankruptcy Code.
[4] *Stipulation* at 2, *in* Appellees' App. at 29–30.
[5] SJ Order at 8, *in* Appellant's Am. App. at 290.

this Modification or Stipulation, the non-breaching Party(ies) shall be entitled to an award of $20,000 as liquidated damages."[6]

Despite the provisions of the Stipulation, Appellant made "multiple complaints to the Colorado Dealer Board against" [Appellees]; "deliver[ed] a packet containing inflammatory allegations against . . . Dimick to . . . Dimick's wife's place of business"; "ma[de] disparaging comments about" Appellees and their "business on social media"; "post[ed] defamatory and disparaging comments on Craig's List about" Appellees and their business; and "ma[de] an anonymous call to Family Protection Services in the fall of 2016 with an unfounded allegation that one of [Appellees'] employees had inappropriate conduct involving his children."[7]

      b.      *The Modified Stipulation Adopted as an Order of the Court and Imposition of a Permanent Injunction*

On February 15, 2017, Appellant and Appellees modified the Stipulation (the "Modified Stipulation")[8] and filed a joint status report and motion for approval of the Modified Stipulation requesting the state court "approve both the attached Stipulation and Modification of Stipulation and adopt the same as an Order of the Court."[9] On March 6,

---

[6] *Order Granting Defendants' Motion for Default* at 2, *in* Appellant's Am. App. at 92.

[7] SJ Order at 8, *in* Appellant's Am. App. at 290.

[8] The Modified Stipulation provides that "[i]f any Party is found to be in breach of the terms and conditions of this Modification or Stipulation, the non-breaching Party(ies) shall be entitled to an award of $20,000 as liquidated damages." It also provides that "[v]iolations of the permanent injunction shall subject the Party in violation to penalties for contempt of Court." *Order Granting Defendants' Motion for Default* at 2, *in* Appellees' App. at 37.

[9] *Joint Status Report and Motion for Approval of Modification of Stipulation* at 2, *in* Appellees' App. at 32.

2017, the state court issued an *Order Approving and Adopting Stipulation and Modification of Stipulation as Order of the Court* (the "Stipulated Order"). In the Stipulated Order, the state court approved and adopted the Stipulation and Modified Stipulation as an "Order of the Court."[10] The state court also entered a permanent injunction "enjoining all of the Parties . . . from violating the non-disparagement and non-impugning provisions" of the Stipulation.[11] The permanent injunction also barred the parties "from making any unwanted contact with the other Parties, their agents and representatives, with the Parties' family members, their employees and the employees' family members."[12] The Stipulated Order stated that "[v]iolations of the permanent injunction shall subject the Party in violation to penalties for contempt of Court."[13]

      c.      *First Order Imposing Relief for Violation of the Stipulated Order*

In September 2017, Appellees filed a motion for default in state court arguing Appellant engaged in harassing behavior in violation of the Stipulated Order. Subsequently, the state court held an evidentiary hearing and issued an order granting the motion for default. The state court found that Appellant "intended at a minimum to annoy and vex [Auto Cycle's] employees with regard to [his] continued behavior and to create a hostile situation by his conduct," even though the Stipulation "contemplated that this type of behavior would cease."[14] The state court, in relevant part, ordered Appellant to pay

---

[10] Stipulated Order at 2, *in* Appellees' App. at 35.
[11] *Id.* at 1, *in* Appellees' App. at 34.
[12] *Id*. at 2, *in* Appellees' App. at 35.
[13] *Id.*
[14] *Order Granting Defendants' Motion for Default* at 6, *in* Appellees' App. at 41.

Appellees $20,000 in liquidated damages for breach of the Stipulated Order but declined to impose further sanctions on Appellant in hopes that the $20,000 payment to Appellees would sufficiently deter Appellant from further violating the Stipulated Order. The state court also reserved the right to impose sanctions for contempt of court for any future breach of the permanent injunction.

        *d.*      *Appellant's Post-Petition Violation of the Stipulated Order*

On June 30, 2021, Appellant filed for relief under chapter 7. In his Schedule D, Appellant listed "Aces Motorcycles/Kurt Dimick" as creditors holding a claim in the amount of $27,642. In January 2022, Appellant followed Mr. Dimick's son, Dalton Dimick, in his vehicle. Dalton Dimick pulled into a Wal-Mart to avoid being followed to his home. Inside the store, Appellant confronted Dalton Dimick in an angry fashion and offered an insult before leaving. In October 2022, Appellees were contacted by Stefanie Lungren, a woman who had a previous personal relationship with Appellant, regarding threats of violence made by Appellant against Appellees, their family members, a State Court judge, and certain members of the legal community. Ms. Lungren informed Appellees that Appellant "has a fixation on [Appellees] and exhibits obsessive behaviors in tracking the whereabouts of [Appellees] both in person as well as on-line."[15] "Ms. Lungren informed" Appellees that Appellant "has a 'kill list' and intends to murder the Dimicks as well as their families."[16] Ms. Lungren "also provided information on how" Appellant "used her employment at an auto dealer financing company to cause harm to

---

[15] SJ Order at 10, *in* Appellant's Am. App. at 292.
[16] *Id.*

5

[Auto Cycle] by disparaging [Auto Cycle] to the point the financing company dropped [Auto Cycle's] floor plan."[17]

  *e. Appellees' Post-Petition Motion for Contempt in the State Court Action*

On November 30, 2022, Appellees filed a *Motion for Contempt* (the "Motion for Contempt") in the State Court Action.[18] In support, Appellees provided the information received from Ms. Lungren and identified other conduct indicating a pattern of harassment. Appellees asked the state court to find Appellant in contempt for violations of the Stipulated Order and requested entry of punitive sanctions including incarceration and remedial sanctions including assessing the stipulated liquidated damages:

> 23. [Appellees] request that the Court find [Appellant] in contempt of this Court's Settlement Order and order Punitive Sanctions for [Appellant's] conduct, pursuant to C.R.C.P. 107, including incarceration. . . .
>
> 24. [Appellees] further request that the Court order Remedial Sanctions upon [Appellant], including assessing the liquidated damages and awarding [Appellees] their attorney fees and costs.[19]

The prayer for relief in the Motion for Contempt asked the state court to:

> (1) find the conduct of Plaintiff to be offensive to the authority and dignity of the Court, and to vindicate the dignity of the Court, to impose a fine and fixed sentence of imprisonment (2) find that Plaintiff has the present ability to comply with the Settlement Order, and (3) to award Defendants the stipulated liquidated damages, costs and attorney's fees in connection with this contempt proceeding and such other and further relief the Court deems appropriate."[20]

---

[17] *Id.*

[18] Motion for Contempt, *in* Appellees' App. at 167.

[19] *Id.* at 4, *in* Appellees' App. at 170.

[20] *Id.*

6

*f.*    *The Evidentiary Hearing on the Motion for Contempt*

On July 24, 2023, the state court held an evidentiary hearing on the Motion for

Contempt. At the hearing, Appellees by counsel asked the state court to find Mr.

Markham in contempt of court and impose sanctions

> [i]nclud[ing] such fines as the Court may deem just. And because Mr. Markham must be taught a lesson here. He needs to know this has to stop. We request that he be incarcerated for a period of at least 90 days. . . . And that they be ordered their costs and fees as provided by 107.2, and also by the stipulation.[21]

> When asked why he filed the Motion for Contempt, Mr. Dimick testified:

> I just want all of this to stop. I don't care about the $20,000 that we can't ever collect. I just want to live in peace. I want the harassment to stop. I want the threat of somebody shooting my son and leaving my grandkids without a dad. It just has to stop. No matter what we do, no matter how many times we come back here we're in the same place right where we started. And he, he doesn't get it. He doesn't get it. He does whatever he wants, and he feels he can lie his way out of it. And it just, I need help from the Court to protect me from this guy.[22]

. . . .

When asked whether he wanted liquidated damages and attorney's fees as an order of the

Court, Mr. Dimick testified,

> Yeah, that's fine. That's not really the point. The point is eight years, I mean I – I'm 65 years old. I need to rest and enjoy my life. I need to feel like my son is safe.[23]

After noting that the hearing was conducted under Colorado Rule of Civil Procedure

107, which governs contempt sanctions, and observing that Rule 107 requires remedial

---

[21] Tr. at 98–99, *in* Appellees' App. at 140–41.
[22] *Id.* at 29–30, *in* Appellees' App. at 71–72.
[23] *Id.* at 33, *in* Appellees' App. at 73.

7

contempt sanctions to be purgeable, the state court first decided whether to impose punitive contempt sanctions and applied a beyond a reasonable doubt burden of proof.

> And I want to go over, first of all I've been asked for both remedial and punitive. Okay. The first one I'm just going to go right to punitive. The standard is beyond a reasonable doubt. The standard is beyond a reasonable doubt. But what we are talking about is whether or not there's been a violation of the Court order as to permanent injunction.[24]

The state court also stated, "since we are here under 107, I do believe there are certain advisement I do need to make sure. And I'm assuming from his presentation with your help that he is, not guilty is his plea to the contempt request."[25]

### g.    The State Court's Order Holding Appellant in Contempt

On July 27, 2023, the state court issued an order (the "Contempt Order") finding that Appellant "willfully," "openly[,] and without remorse" violated the Stipulated Order.[26] The state court determined that "[t]he Court's dignity is at issue when such [contemptuous] action persists and that dignity must be restored" and "[t]he community must see the example of such flaunting as leading to consequences" and noted that punitive sanctions were appropriate.[27] Additionally, the state court concluded Appellant's actions triggered the liquidated damages portion of the Stipulated Order and awarded Appellees $20,000 as well as attorneys' fees (the "Contempt Sanctions").

Specifically, the state court ruled:

The Court **FINDS** that Mr. Markham is guilty of contempt beyond a reasonable doubt for violating the non-disparagement and harassment

---

[24] *Id.* at 111, *in* Appellees' App. at 153.

[25] *Id.* at 91, *in* Appellees' App. at 133.

[26] Contempt Order at 4, *in* Appellant's Am. App. at 233.

[27] *Id.*

8

portions of the Court's Order. The Court also finds that Mr. Markham's actions trigger the liquidated damages portion of the Order and awards $20,000.00 in favor of the Defendants and against Plaintiff Cory Markham. Also, Defendants are awarded their reasonable attorney fees for pursuit of this action.[28]

Finally, the state court scheduled a subsequent sentencing hearing noting that the prior court awarded damages in hopes that it would inspire compliance and it would now take that "lack of deterring inspiration into account at sentencing."[29] At the August 3, 2023, sentencing hearing, the state court stated,

> We have already had one contempt. That contempt was without any jail time. The $20,000 was imposed under the hope that it would inspire compliance.
>
> So these are actions to me and so I do think jail time is appropriate. I think it's appropriate because Judge Jouard was very gracious by giving just monetary punishment when it was violated, and it is, that is the first warning.[30]

The state court then sentenced Appellant to incarceration for ninety days for his violations of the Stipulated Order. Appellant's counsel argued the state court lacked jurisdiction to sentence Appellant because the Stipulated Order was issued before the bankruptcy petition, but the state court rejected this argument and asserted its jurisdiction to enforce the Stipulated Order to uphold the dignity of the court.

### h.    The Adversary Proceeding Asserting a Willful Stay Violation

On February 19, 2024, Appellant filed an adversary proceeding alleging Appellees willfully violated the automatic stay under § 362(a) by seeking a money judgment against

---

[28] *Id.* at 5, *in* Appellant's Am. App. at 234.

[29] *Id.*

[30] Tr. at Appellant's Am. App. at 266.

Appellant in state court after his bankruptcy filing. On May 7, 2024, Appellant filed a motion for partial summary judgment and Appellees filed a cross motion for summary judgment. Appellees argued: (a) the state court had jurisdiction to hear their contempt motion; (b) the automatic stay does not apply to actions seeking to enjoin allegedly unlawful post-petition conduct; (c) Appellees were not pursuing a claim under § 101(5)(B) and thus were not in violation of § 362(a)(1); (d) the automatic stay does not apply to a governmental unit using its contempt powers under § 362(b)(4); and (e) the automatic stay was not violated by the state court awarding the Contempt Sanctions payable to Appellees.

On September 24, 2024, the Bankruptcy Court entered the SJ Order. As an initial matter, the Bankruptcy Court concluded Appellant "failed to follow basic summary judgment requirements" by not including a short and concise statement of material facts or supporting the factual assertions in his motion.[31] Appellant asserted there was no genuine issue to be tried and did not provide support for the factual assertions contained in his motion. The Bankruptcy Court further concluded Appellant's response to Appellees' summary judgment motion was procedurally deficient because he "offered no citation to evidence that would controvert the facts as stated by" Appellees.[32] Consequently, the Bankruptcy Court concluded the facts set forth in Appellees' summary judgment motion were deemed admitted. As for the merits of Appellant's claim, the Bankruptcy Court concluded Appellees' actions were excepted from the automatic stay

---

[31] SJ Order at 13, *in* Appellant's Am. App. at 295.
[32] *Id.* at 14, *in* Appellant's Am. App. at 296.

10

under § 362(b)(4), and thus, Appellant's claim failed as a matter of law. Judgment was entered in the case on September 24, 2024.

## II.     Jurisdiction

The BAP has jurisdiction to hear timely filed appeals from "final judgments, orders, and decrees" of bankruptcy courts within the Tenth Circuit, unless a party elects to have the district court hear the appeal.[33] Appellant timely filed a notice of appeal from the SJ Order, which is a final order.[34] No party has elected to have the district court hear the appeal. Accordingly, this Court has jurisdiction to hear this appeal.

## III.     Issue on Appeal and Standard of Review

There is one issue on appeal: whether the Bankruptcy Court erred in granting summary judgment and determining that Appellees did not violate the automatic stay "by filing a motion for contempt [in state court]. . . and litigat[ing] the same motion thereafter."[35]

We review a bankruptcy court's order granting or denying summary judgment de novo.[36] Summary judgment is appropriate when a party shows there is no genuine dispute

---

[33] 28 U.S.C. § 158(a)(1), (b)(1), and (c)(1); Fed. R. Bankr. P. 8003, 8005.

[34] *In re C.W. Mining Co.*, 798 F.3d 983, 986 n.1 (10th Cir. 2015) (holding that a bankruptcy court order disposing of all claims in an adversary proceeding is a final appealable order).

[35] *Statement of Issues to Be Presented*, Bankr. ECF No. 35.

[36] *In re Harris*, 209 B.R. 990, 993 (10th Cir. BAP 1997) ("The grant or denial of summary judgment is reviewed *de novo*."). *See also Dodge v. Cotter Corp.*, 203 F.3d 1190, 1197 (10th Cir. 2000) (reviewing the trial court's "entry of summary judgment barring claims under the doctrine of collateral estoppel de novo, construing the record in the light most favorable to the non-moving party and drawing all inferences in that party's favor"); *In re Audley*, 275 B.R. 383, 388 (10th Cir. BAP 2002) (reviewing the

as to any material fact and the moving party is entitled to judgment as a matter of law.[37]

Whether the § 362(b)(4) regulatory exception applies to a civil contempt proceeding

under the circumstances of this action is a question of law also reviewed de novo.[38] "De

novo review requires an independent determination of the issues, giving no special

weight to the bankruptcy court's decision."[39] Accordingly, the Court applies the same

standard as the Bankruptcy Court.[40]

## IV.    Discussion

Appellant does not contest that the state court proceeding fell within the police and

regulatory power exception to the automatic stay to the extent Appellees sought punitive

contempt sanctions in the form of incarceration. Appellant argues that Appellees violated

the automatic stay by asking the state court to award them liquidated damages in the

amount of $20,000. Appellees counter that the police and regulatory power exception

applied because the contempt proceeding was not pursued primarily for the purpose of

---

bankruptcy court's decision to give collateral estoppel effect on summary judgment de novo).

[37] Fed. R. Civ. P. 56(a) made applicable by Fed. R. Bankr. P. 7056.

[38] *In re Mallo*, 774 F.3d 1313, 1317 (10th Cir. 2014) ("[W]e review the bankruptcy court's interpretation of a statute de novo.") (quoting *Okla. Dept. of Sec. ex rel. Faught v. Wilcox*, 691 F.3d 1171, 1173 (10th Cir. 2012)). *See also In re Morgan*, 182 F.3d 775, 777 (11th Cir. 1999) (interpreting and applying the bankruptcy code involve questions of law subject to *de novo* review); *In re Berg*, 230 F.3d 1165, 1167 (9th Cir. 2000) (applying the § 362(b)(4) exception, which involves interpreting the bankruptcy code and is subject to *de novo* review).

[39] *In re Liehr*, 439 B.R. 179, 182 (10th Cir. BAP 2010) (citing *Salve Regina Coll. v. Russell*, 499 U.S. 225, 238 (1991)).

[40] *Carlile v. Reliance Standard Life Ins. Co.*, 988 F.3d 1217, 1221 (10th Cir. 2021).

protecting a pecuniary interest and the judgment for $20,000 was clearly to uphold the dignity of the court and to enforce compliance with the Stipulated Order.

We note that what is not at issue in this appeal is whether the Contempt Sanctions are void as having been entered in violation of the automatic stay or whether Appellees may enforce the state court judgment for $20,000 without obtaining relief from the stay. What is at issue is whether Appellees violated the automatic stay by seeking an award of $20,000 from the state court in their Motion for Contempt and at the contempt hearing. We conclude, for the reasons stated below, that Appellees did not violate the automatic stay.

a.     Section 362(b)(4)

Pursuant to § 362(a), a petition commencing a bankruptcy case "operates as a stay, applicable to all entities of—(1) the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the [bankruptcy] case. . . ."[41] Section 362(b)(4), however, provides an exception to this rule at issue in this appeal: "[t]he filing of a petition . . . does not operate as a stay—. . . of the commencement or continuation of an action or proceeding by a governmental unit . . . to enforce such governmental unit's police or regulatory power[.]"[42]

---

[41] 11 U.S.C. § 362(a).
[42] 11 U.S.C. § 362(b)(4).

13

The Tenth Circuit has held the § 362(b)(4) exception "can apply to [government] actions, even though such actions may affect [Appellant's] assets."[43] The Circuit explained that "[u]nder the plain language of the statute, governmental action must simply be taken for the purpose of exercising 'police or regulatory' power in order to qualify for the exemption."[44] The Circuit proceeded to note that,

> courts have developed two tests for determining whether agency action fits within the [§ 362(b)(4)] exception. Under the "pecuniary purpose" test, the court asks whether the government's proceeding relates primarily to the protection of the government's pecuniary interest in the Appellant's property and not to matters of public policy. If it is evident that a governmental action is primarily for the purpose of protecting a pecuniary interest, then the action should not be excepted from the stay. In contrast, the "public policy" test distinguishes between government proceedings aimed at effectuating public policy and those aimed at adjudicating private rights. Under this second test, actions taken for the purpose of advancing private rights are not excepted from the stay.[45]

---

[43] *Eddleman v. U.S. Dep't of Labor*, 923 F.2d 782, 790 (10th Cir. 1991), *overruled in part on other grounds by*, *Temex Energy, Inc. v. Underwood, Wilson, Berry, Stein & Johnson*, 968 F.3d 1003, 1005 n.3 (10th Cir. 1992).

[44] *Id.* ("We must assume that Congress chose its language with the full recognition that the exception would allow governmental actions to encroach on the court's control of debtors' affairs.").

[45] *Id.* (citations omitted). Although the Tenth Circuit applied both tests in *Eddleman*, *Eddleman* suggests that satisfaction of either test will suffice. *Eddleman*, 923 F.2d at 791 ("Although we do not feel bound to apply [a second test], we also conclude that [this] test presents no barrier.") (suggesting both tests are not required). Other Circuits have held similarly. *See City & Cnty. of San Francisco v. PG & E Corp.*, 433 F.3d 1115, 1124 (9th Cir. 2006) ("Satisfaction of either test will suffice to exempt the action from the reach of the automatic stay."); *In re Fulton*, 926 F.3d 916, 929 (7th Cir. 2019) ("Satisfying either test is sufficient for the exception to apply."); Collier on Bankruptcy ¶ 362.05[5][a] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2011) (if action satisfies "either" test "then the exception applies"); *United States v. Commonwealth Cos. (In re Commonwealth Cos.)*, 913 F.2d 518, 523 (8th Cir. 1990) (applying only the pecuniary interest test without comment as to whether both are required). *But c.f. In re Nortel Networks, Inc.*, 669 F.3d 128, 139 n.12 (3d Cir. 2011) ("It is unclear whether the government action must meet both tests to fall within the police power exception.").

Although the Tenth Circuit has not explicitly addressed the applicability of § 362(b)(4) to a proceeding that involves a dual purpose, other Circuits have concluded that when a proceeding or law serves dual purposes (public policy and pecuniary interests/private rights), courts must determine the primary purpose of the proceeding or the law being enforced to decide whether the § 362(b)(4) exception applies.[46]

> b.    *Contempt Proceedings Under Colorado Law*

Under Colorado Rule of Civil Procedure 107, a court may impose remedial and punitive sanctions for direct or indirect contempt. A "punitive sanction" is "[p]unishment by unconditional fine, fixed sentence of imprisonment, or both, for conduct that is found to be offensive to the authority and dignity of the court."[47] A person accused of contempt has certain rights akin to the rights of a criminal defendant before a punitive sanction may

---

[46] *See United States v. Commonwealth Cos. (In re Commonwealth Cos.)*, 913 F.2d 518, 523 n.6 (8th Cir. 1990); *Safety-Kleen, Inc. (Pinewood) v. Wyche*, 274 F.3d 846, 865 (4th Cir. 2001) ("many laws have a dual purpose of promoting the public welfare as well as protecting the state's pecuniary interest. The fact that one purpose of the law is to protect the state's pecuniary interest does not necessarily mean that the exception is inapplicable. Rather, we must determine the *primary* purpose of the law that the state is attempting to enforce."); *Universal Life Church Inc. v. United States (In re Universal Life Church, Inc.)*, 128 F.3d 1294, 1299 (9th Cir. 1997) ("[M]ost government actions which fall under this exemption have some pecuniary component, particularly those associated with fraud detection. This does not abrogate their police power function. Only if the action is pursued 'solely to advance a pecuniary interest of the governmental unit' will the automatic stay bar it."); *Fed. Energy Regulatory Comm'n v. FirstEnergy Sols. Corp. (In re FirstEnergy Solutions Corp.)*, 945 F.3d 431, 447 (6th Cir. 2019) ("When an action furthers both public and private interests and *the private interests do not significantly outweigh the public benefit* from enforcement, courts should . . . recognize such actions as within [the exception for] 'such governmental unit's police and regulatory power,' as that term is used in § 362(b)(4).").

[47] Rule 107(a)(4); *see also* Rule 107(d)(1) ("The court may impose a fine or imprisonment or both if the court expressly finds that the person's conduct was offensive to the authority and dignity of the court.").

be imposed.[48] "Punitive sanctions for contempt must be supported by findings of fact establishing beyond a reasonable doubt (1) the existence of a lawful order of the court; (2) the contemnor's knowledge of the order; (3) the contemnor's ability to comply with the order; and (4) the contemnor's willful refusal to comply with the order."[49] Punitive sanctions punish the offender to vindicate the authority and integrity of the court and to provide an example to others of what can happen if an order is violated.[50]

In contrast, "remedial sanctions for contempt" are "[s]anctions imposed to force compliance with a lawful order or to compel performance of an act within the person's power or present ability to perform."[51] A party sanctioned with a remedial sanction must be able to avoid or purge the sanction or a portion thereof by complying with a court order.[52] When a court imposes a remedial contempt sanction, it must do so "in writing or on the record describing the means by which the person may purge the contempt."[53] In Colorado, a remedial sanction cannot be compensatory for a past violation of a court order.[54]

---

[48] Rule 107(d)(1).

[49] *In re Marriage of Cyr & Kay*, 186 P.3d 88, 92 (Colo. App. 2008).

[50] Rule 107(a)(4).

[51] Rule 107(a)(5).

[52] *See* Rule 107(d)(2).

[53] *Id.* ("The court shall enter an order in writing or on the record describing the means by which the person may purge the contempt and the sanctions that will be in effect until the contempt is purged.").

[54] *See In re Marriage of Moore*, No. 24CA0802, 2025 WL 1354900, at *4 (Colo. App. May 8, 2025) (unpublished) (stating that "[a] fine may be used to preserve the dignity of the court as a punitive sanction but that kind of fine is 'payable to the court, not to the parties'").

     *c.*      *Did the Bankruptcy Court err in holding that the request for Contempt Sanctions from the state court to Appellees was excepted from the stay under § 362(b)(4)?*

The § 362(b)(4) exception to the automatic stay applies only to "the commencement or continuation of an action or proceeding *by a governmental unit* to enforce *such governmental unit's* police or regulatory power."[55] The Bankruptcy Court rejected Appellant's argument "that, because the Motion for Contempt was initiated by [Appellees] and not the State Court, the § 362(b)(4) exception does not apply."[56] Specifically, the Bankruptcy Court concluded "a creditor who brings an action to enforce court orders in furtherance of a public policy interest rather than a pecuniary interest acts [as] a judicial surrogate such that Section 362(b)(4) excepts such action from the ambit of the automatic stay."[57]

For purposes of this appeal, we assume without deciding that § 362(b)(4) applies even though Appellees, private actors, commenced the relevant proceeding. Appellant failed to raise the issue of whether a creditor who brings an action to enforce a court order is invoking the power of the court as a "governmental unit" in his opening brief, and thus, it is waived.[58]

---

[55] 11 U.S.C. § 362(b)(4) (emphasis added).

[56] SJ Order at 18, *in* Appellant's Am. App. at 300.

[57] *Id.* at 23, *in* Appellant's Am. App. at 305.

[58] *See United States v. Pickel*, 863 F.3d 1240, 1259 (10th Cir. 2017) ("But he makes this argument for the first time in his reply brief, and it is therefore waived"); *Silverton Snowmobile Club v. U.S. Forest Serv.*, 433 F.3d 772, 783 (10th Cir. 2006) ("[T]he failure to raise an issue in an opening brief waives that issue. . . . Consistent with these principles is the general rule that appellate courts will not entertain issues raised for the first time on appeal in an appellant's reply brief." (internal citations omitted)).

17

The Bankruptcy Court found Appellees' actions "were undertaken with the goal of compelling" Appellant's "compliance with the injunctive portions of the State Court's Order prohibiting [him] from disparaging and harassing" Appellees "rather than for a pecuniary purpose."[59] The Bankruptcy Court also found the state court's purpose in awarding the Contempt Sanctions "was to vindicate the State Court's dignity considering the [Appellant's] repeated and willful violation of its Order, rather than to benefit particular creditors such as [Appellees]."[60]

Appellant argues that Appellees violated the automatic stay because they requested enforcement of the liquidated damages provision of the Stipulation, which was a claim for monetary damages that inured to the exclusive benefit of Appellees. Appellant further argues there is no public policy purpose in enforcing a prepetition liquidated damages provision here. The state court's imposition of punitive sanctions in the form of incarceration is not at issue in this appeal. Thus, the issue on appeal is limited to whether commencement and prosecution of the state court contempt proceeding violated the stay with respect to Appellees' request for a monetary sanction award payable to them.

Consistent with *Eddleman* and the other Circuits that have addressed the application of § 362(b)(4), satisfaction of the public policy test renders it unnecessary to determine whether the action also satisfies the pecuniary interest test. Under the public policy test, the court distinguishes between proceedings aimed at effectuating public policy and those aimed at adjudicating private rights. In isolation, a request for monetary

---

[59] SJ Order at 26, *in* Appellant's Am. App. at 308.
[60] *Id.*

18

sanctions based on breach of contract damages would not fall within the police and regulatory power exception to the automatic stay under § 362(b)(4) because it is merely a request to adjudicate a private contract right. But if a monetary award serves mixed purposes, one to effectuate public policy and the other to further a private interest, the court should consider all aspects of the requested relief and the entire hearing to determine the primary aim of that aspect of the proceeding. That is the circumstance present in this appeal.

To the extent Appellees requested an award of monetary sanctions for the purpose of deterring misconduct in the form of future violations of the Stipulated Order, the request was aimed at effectuating the public policy of deterring knowing and willful violations of court orders. But to the extent the monetary award was requested as compensatory liquidated damages, it was not aimed at effectuating public policy. If the primary purpose of the request for the Contempt Sanctions had been compensation, it would have violated the automatic stay.

Here, there was a dual purpose behind Appellees' request for an award of the Contempt Sanctions in the form of a monetary award: (i) to deter Appellant from further willful violations of the State Court order and (ii) to compensate Appellees. It is evident from the record that Appellees' request for monetary Contempt Sanctions was made primarily to deter Appellant from violating the State Court order in the future by stopping the continued harassment and defamation on social media and mitigating the risk that Appellant would follow through on his "kill list." Appellees' request for the Contempt Sanctions to compensate them was incidental.

19

Appellees stated at the hearing on the Motion for Contempt, "I don't care about the $20,000 that we can't ever collect. I just want to live in peace. I want the harassment to stop."[61] Appellees' principal goal at the hearing and in filing the Motion for Contempt was to ask the state court to incarcerate Appellant for eight years and impose monetary sanctions to stop the harassment and allow Appellees to live peace.

After the state court awarded punitive sanctions in the form of incarceration as punishment for violations of the state court order, which insulted the court's dignity and authority, i.e., for a public policy purpose,[62] the state court then ruled:

> The Court also finds that Mr. Markham's actions trigger the liquidated damages portion of the Order and awards $20,000.00 in favor of the [Appellees]and against [Appellant] Cory Markham. Also, [Appellees] are awarded their reasonable attorney fees for pursuit of this action. [Appellees] may submit their attorney fee request within 21 days of the date of this Order.[63]

---

[61] *Order on Plaintiff's Motion for Partial Summary Judgment and Defendants' Cross-Motion for Summary Judgment* at 11, Exhibit E at 29–30, *in* Appellant's Am. App. at 126–27. Additionally, at the hearing Mr. Dimick stated: "I just want to feel safe. I feel like the money part is not driving the point home. We want to feel safe. We want to be left alone." *Id.* at 33, *in* Appellant's Am. App. at 130. Further, when asked if Appellees wanted imposition of damages as a sanction for Appellant's post-petition conduct, Mr. Dimick stated, "Yeah, that's fine. That's not really the point. The point is eight years, I mean I – I'm 65 years old. I need to rest and enjoy my life. I need to feel like my son is safe." *Id.*

[62] We note the state court followed all requirements for awarding punitive sanctions (applying the reasonable doubt standard and giving Appellant the requisite notice). Nonetheless, we do not reach the issue of whether the Contempt Sanctions were ultimately awarded as punitive sanctions or compensatory breach of contract damages because Appellant does not ask this Court to determine that the Contempt Sanctions are unenforceable.

[63] Contempt Order at 5, *in* Appellant's Am. App. at 234.

20

Appellant asserts that Appellees' demand for an award of $20,000 as compensatory liquidated damages violated the automatic stay and was not an action taken to enforce police and regulatory powers. Even though Appellees requested the monetary award as a remedial contempt sanction, the $20,000 payment the state court required does not fit squarely within the requirements for a Colorado court to impose a contempt sanction, either punitive or remedial. Colorado law requires that punitive contempt fines imposed to vindicate the court's authority are to be paid to the court rather than a party.[64] Colorado law requires that a monetary remedial contempt sanction be imposed only to deter future violations of an order in a way that makes the contempt purgeable, such as payment of a fixed sum periodically until the contempt is purged. Remedial contempt sanctions are not imposed to compensate a party for damages.

Nevertheless, we conclude that the public policy test is satisfied with respect to Appellees' request for remedial contempt sanctions in the form of a request for a monetary award payable to Appellees. The applicability of the police and regulatory power exception to the automatic stay depends not on the purpose for which the state court imposed the monetary award but the primary purpose for which Appellees requested the award. The primary purpose of Appellees' request for sanctions that initiated the contempt proceeding and the position they took at the hearing, including the request for a monetary award payable to Appellees, was aimed at effectuating public policy—i.e., to deter future misconduct and to ensure Appellant's compliance with the

---

[64] *See In re Marriage of Moore*, No. 24CA0802, 2025 WL 1354900, at *4 (Colo. App. May 8, 2025) (unpublished).

21

injunctive portions of the Stipulated Order, and, in turn, to punish Appellant for his misconduct and repeated defiance of the state court order.[65] The compensatory aspect of the request for a monetary award was incidental.

Appellant's argument that § 362(b)(4) is inapplicable because the Appellant's invoked the liquidated damages clause in the Stipulated Order in requesting a monetary award is not persuasive. That request was made primarily for its deterrent effect. The deterrent effect of monetary penalties or sanctions is essential for the court to protect its public policy interest of discouraging certain kinds of misconduct even when private parties may benefit from those sanctions.[66] Similarly, we reject Appellant's argument that "[t]here is no 'public policy' in enforcing a pre-petition liquidated damages provision between a creditor and debtor"[67] as that is not the policy the contempt proceeding was aimed at effectuating. Rather, the Contempt Sanctions further the public policy goal of protecting the integrity of the court system and deterring misconduct. Although it is undisputed that the state court enforced the damages portion of the Stipulated Order to award damages to Appellees as requested, the *primary purpose* of the request for

---

[65] Courts have found similar public policy interests in deterring parties and others from engaging in misconduct or violating court orders to protect the authority and dignity of the court. *See .e.g., Alpern v. Lieb*, 11 F.3d 689, 690 (7th Cir. 1993); *United States v. Coulton*, 594 F. App'x 563 (11th Cir. 2014) (unpublished); *Porter v. Nabors Drilling USA, L.P.*, 854 F.3d 1057, 1063 (9th Cir. 2017); *In re Berg*, 230 F.3d 1165 (9th Cir. 2000); *In re Dingley,* 852 F.3d 1143 (9th Cir. 2017); *In re Derivium Cap., LLC*, Adversary No. 06–80114, 2006 WL 2827361, at *5 (Bankr. D.S.C. 2006) (unpublished).

[66] *See In re Berg*, 230 F.3d at 1168 ("[A]lthough private parties may benefit financially from sanctions, the deterrent effect of monetary penalties can be essential for the government to protect its regulatory interests."). *See, e.g.*, *O'Brien v. Fischel*, 74 B.R. 546, 550 (D. Haw. 1987).

[67] Appellant's Am. Opening Br. 19.

Contempt Sanctions was a method of enforcing public policy to censor misconduct and the repeated violation of court orders rather than an assertion of private rights to compensation.

## V.    Conclusion

For these reasons, the Bankruptcy Court did not err in concluding as a matter of law that the § 362(b)(4) exception to the automatic stay applied to the request for Contempt Sanctions. Thus, the Bankruptcy Court did not err in granting summary judgment, and we AFFIRM.